**DANIEL J. HARTWIG ASSOCIATES, INC., Plaintiff–Appellee,**

v.

**Allan KANNER, Defendant–Appellant.**

No. 88–1883.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1989.

Decided Sept. 19, 1990.

---

Harry E. VanCamp, Louderman, Hayes & VanCamp, Madison, Wis., for plaintiff-appellee.

Scott T. Herrick, Reynolds, Gruber, Herrick, Flesch & Kasdorf, Madison, Wis., Allan Kanner, Eunice Trevor, Kanner & Associates, Philadelphia, Pa., for defendant-appellant.

Before POSNER, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Daniel J. Hartwig Associates, Inc., is an environmental consulting firm that rendered consulting and expert witness services to Allan Kanner, an attorney whose practice is limited to environmental and toxic injury litigation. After Kanner failed to pay Hartwig for its services, Hartwig filed a breach of contract suit in federal district court. The district court directed a verdict in favor of Hartwig in the amount of $44,225.04. Kanner appeals on three grounds: (1) he contends that the district court did not have personal jurisdiction over him; (2) he contends that the district court erred in directing a verdict because a material issue of fact existed as to whether he owed Hartwig for its services; and finally, (3) he contends that the district court denied him due process because the court did not grant a continuance to allow additional time for discovery purposes. Having found none of these three grounds per-

suasive, we affirm the decision of the district court. We will discuss the relevant facts as they pertain to each of Kanner's claims.

### Personal Jurisdiction

Hartwig Associates is a corporation organized under the laws of Wisconsin with its principal place of business located in Oregon, Wisconsin. Kanner is a resident of Pennsylvania and maintains law offices in Philadelphia, Pennsylvania, and Vinland, New Jersey. Hartwig Associates initiated this action against Kanner in the United States District Court for the Western District of Wisconsin. Subject matter jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332.[1] Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Kanner moved to have the action dismissed contending that the district court did not have personal jurisdiction over him. The district court denied the motion. Kanner appeals this denial.

Daniel J. Hartwig, the principal owner of Hartwig Associates, first met Allan Kanner in Madison, Wisconsin, while they were both working on a lawsuit unrelated to this litigation. Kanner expressed an interest in Hartwig's services and suggested that Hartwig send him a resume and some information about his firm's environmental consulting services. Hartwig mailed Kanner a resume. At a later date, Kanner phoned Hartwig and asked Hartwig if he was interested in working for Kanner as a consultant on a case filed in Tennessee. Kanner sent Hartwig some materials to review; after reviewing those materials, Hartwig agreed by phone to work as a consultant for Kanner in the Tennessee case.

Kanner subsequently solicited and employed Hartwig to perform services in two additional lawsuits. Hartwig worked as a consultant on another case filed in Tennessee and as an expert witness in a case filed in California. All three cases required

Hartwig to travel (at Kanner's expense) to Tennessee and California and conduct investigations of certain sites as part of Hartwig's environmental consultation. Hartwig also traveled to Kanner's office in Philadelphia where all strategy conferences were held. In connection with each lawsuit, Kanner sent voluminous documentation to Oregon, Wisconsin, for Hartwig to review and comment upon. Hartwig estimated that 75% or more of the time he spent on each case was devoted to research and preparation in Oregon, Wisconsin.

■ A federal district court sitting in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which the district court sits would have personal jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir.1990); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir.1985). Whether a Wisconsin state court would have jurisdiction over Kanner is a two-step inquiry. First, we must determine whether the law of Wisconsin—specifically, the Wisconsin long-arm statute—subjects Kanner to *in personam* jurisdiction. *Giotis*, 800 F.2d at 665; *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596, 598–99 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). If the answer is yes, we must then determine whether the exercise of jurisdiction under the long-arm statute runs afoul of the due process requirements of the fourteenth amendment. *Heritage House*, 906 F.2d at 283; *Giotis*, 800 F.2d at 665.

■ The Wisconsin long-arm statute provides in pertinent part:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action ...

---

1. The amount in controversy is $44,225.04. In order to establish diversity jurisdiction at the time the complaint was filed (1987), the amount in controversy needed only to exceed $10,000.

In November 1988, 28 U.S.C. § 1332 was amended to raise the jurisdictional amount in controversy to $50,000 or more.

under any of the following circumstances:

\* \* \* \* \* \*

(5) **Local services, goods or contracts.** In any action which:

(a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or

(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant;

. . . .

Wis.Stat. § 801.05.

Either section of the statute clearly encompasses the type of transaction Kanner and Hartwig entered into. The long-arm statute requires only that *some* services were contemplated to be or actually were performed in Wisconsin. Kanner contends that he and Hartwig did not contemplate that "substantial" performance of the contract would occur in Wisconsin. Likewise, Kanner contends that the contract was not "substantially" performed in Wisconsin. However, Kanner does not claim that he and Hartwig did not contemplate some performance of the contract in Wisconsin. (Such a claim would be unrealistic anyway, given the fact that Hartwig's sole office is located in Wisconsin). Nor does Kanner dispute the fact that Hartwig actually did perform some of the contract in Wisconsin. In addition, it is obvious that Kanner "rati-

fied" this performance—Kanner sent a substantial amount of material to Hartwig's place of business in Oregon; Wisconsin, for Hartwig to review; however, Kanner in no way indicated that Hartwig was to review this material outside of Wisconsin.

█ Up to this point, we have determined that the long-arm statute is intended to cover the type of transaction that Hartwig and Kanner entered into. Further construction regarding the scope of the statute is not necessary. Unlike the long-arm statutes of some states, the Wisconsin statute is intended to reach to the fullest extent allowed under the due process clause. *See e.g., State ex rel. N.R.Z. v. G.L.C.,* 152 Wis.2d 97, 103–05, 447 N.W.2d 533, 535 (1989); *Lincoln v. Seawright,* 104 Wis.2d 4, 9–11, 310 N.W.2d 596, 599 (1981); *Stevens v. White Motor Corp.,* 77 Wis.2d 64, 73–75, 252 N.W.2d 88, 93 (1977).[2] Thus, if personal jurisdiction over Kanner is consistent with due process, it was intended under the long-arm statute. Accordingly, we will proceed to the second part of our analysis; that is, we will determine whether the due process clause allows a Wisconsin court to exercise personal jurisdiction over Kanner under the particular circumstances of this case.

█ In order to assert personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have purposefully availed himself of the privilege of conducting activity within the forum state, thus invoking the benefits and the protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Wood-*

---

**2.** The due process requirements are merely the minimum rights possessed by nonresident defendants. A state is free to provide such defendants with greater rights. *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 665 (7th Cir.1986) citing *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197–98, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) (the boundaries or limits under the Illinois long-arm statute are not to be equated with the minimum contacts test under the due process clause); *George v. Strick Corp.,* 496 F.2d 10, 12–13 (10th Cir.1974) (Oklahoma long-arm statute does not extend courts'

jurisdiction to the maximum limits permitted under the due process clause). Several states, like Wisconsin, have long-arm statutes that are intended to be co-extensive with the due process clause. *Giotis,* 800 F.2d at 665, citing *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355, 1357–58 (9th Cir.1983) (Oregon long-arm statute confers jurisdiction to outer limits of the due process clause); *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1083 (5th Cir. 1983) (limits of Louisiana long-arm statute synonymous with those of due process).

*son,* 444 U.S. 286, 294–95, 100 S.Ct. 559, 565–66, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). The requirement of purposeful availment protects the defendant's interest in not being subject to the binding judgments of a forum state in which the defendant has not established "meaningful contact, ties or relations." *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181; *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

■ In determining whether a defendant has purposefully availed himself of the benefits and protections of a given state, the defendant's conduct and contacts with the forum state must be such that he could reasonably anticipate being subjected to suit there. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Thus, the main factor in the due process analysis is "foreseeability" of being subjected to suit in the forum state. *Heritage House,* 906 F.2d at 283. Contacts with the forum state that are merely "random," "fortuitous," or "attenuated" are not sufficient to establish that jurisdiction was foreseeable to the defendant. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). With these principles in mind, we turn to the specific circumstances of this case.

Two significant factors lead us to conclude that Kanner could reasonably foresee being subject to suit in a Wisconsin court. First, Kanner solicited Hartwig's services. Second, and more important, Kanner solicited those services on a number of occasions, thus creating a continuing relationship between himself and a resident of the forum state. *Heritage House,* 906 F.2d at 283–84; *Madison Consulting Group v. South Carolina,* 752 F.2d 1193, 1202 (7th Cir.1985).

With regard to solicitation, our case closely resembles *Madison Consulting,* a case afforded substantial weight by the district court. The plaintiff in *Madison Consulting* was a small economic consulting firm located in Madison, Wisconsin. The defendants were the state of South Carolina, the South Carolina Public Service Authority (the Authority), and several officers of the Authority. The plaintiff sued the defendants in a Wisconsin federal court to recover payment for consulting services rendered but not paid for. The defendants had no jurisdictionally significant contacts with Wisconsin save those arising from the consulting contract. *Id.* at 1194.

We held that personal jurisdiction over the defendants was consistent with the requirements of the due process clause. *Id.* at 1202. In so holding, we heavily emphasized the fact that the defendants actively solicited the contract by contacting the plaintiff to initiate the negotiations and by inviting a member of the plaintiff's firm to travel to Washington, D.C. at the defendants' expense in order to negotiate the contract. *Id.* at 1202–03. We reasoned that the defendants' active solicitation, even if for just a single contract, amounted to purposeful establishment of contacts with the forum that easily satisfied the dictates of due process. *Id.; see also Heritage House,* 906 F.2d at 283–84 (defendant's affirmative acts of solicitation in the forum state made it reasonably foreseeable that it could be subject to jurisdiction of the forum state); *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176–77 (7th Cir. 1971) (fact that defendant initiated negotiation leading to contract by phoning plaintiff used as factor in finding personal jurisdiction).

Here, Kanner requested Hartwig to send a resume and information about Hartwig's services to Kanner's law offices in Pennsylvania. Thus, Kanner opened the door for negotiations and purposefully directed his efforts towards a Wisconsin resident. Later, Kanner phoned Hartwig to determine whether Hartwig wanted to work on a case that Kanner was handling in Tennessee. Kanner also sent Hartwig materials to help Hartwig determine whether he was interested in working for Kanner on the Tennessee case. Kanner's efforts towards soliciting Hartwig for the initial contract be-

tween Hartwig and Kanner do not appear to be significantly different than the efforts of the defendants in *Madison Consulting.*

■ Kanner also phoned Hartwig on other occasions in an attempt to engage Hartwig's services in other cases. As a result of these further solicitations, Hartwig performed services for Kanner in two other lawsuits, thus creating an ongoing relationship between Hartwig and Kanner. While a single contract between a seller and a nonresident buyer, without something more (such as active solicitation), does not automatically establish purposeful availment, *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185; *Giotis,* 800 F.2d at 667; *Afram,* 772 F.2d at 1362, where a defendant has created "continuing obligations" between himself and the residents of the forum, he manifestly avails himself of the privilege of conducting business in the forum. *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184; *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). In upholding personal jurisdiction in our recent decision in *Heritage House,* we put substantial weight on the fact that the defendant maintained an ongoing relationship with a resident of the forum state. 906 F.2d at 284. Kanner's relationship with Hartwig lasted from the time of the initial solicitation until four years later when Hartwig concluded work on its third lawsuit for Kanner. Because Kanner knowingly reached out to a Wisconsin business and created a continuing relationship with that business, we cannot say that Kanner's contacts with Wisconsin were "random, fortuitous or attenuated." Rather, it is apparent that Kanner

purposely directed his efforts towards a resident of Wisconsin to such a degree that he could reasonably foresee being subjected to the jurisdiction of a Wisconsin court.[3]

While not dispositive to our conclusion, there are other relevant factors that weigh in favor of finding purposeful availment in this case. Hartwig presented evidence that Kanner had connections with Wisconsin residents outside of his business dealings with Hartwig. For instance, Kanner was working on a lawsuit in Wisconsin when he first met Hartwig. In addition, another Wisconsin resident (a Mr. Ela) submitted an affidavit to the district court stating that Kanner had hired him as an expert consultant in another legal matter, thus extending Kanner's business dealings with the forum state.

Finally, we note that Hartwig performed a substantial amount of the contract in Wisconsin—a fact that Kanner could have reasonably anticipated at the time he established a business relationship with Hartwig. Although not dispositive, the fact that a plaintiff performs a substantial amount of a contract in the forum state constitutes another meaningful contact between the defendant and the forum. *Madison Consulting,* 752 F.2d at 1204. Kanner argues that the contract could not have been performed to any substantial degree in Wisconsin because the three lawsuits Hartwig worked on were filed outside of Wisconsin and required Hartwig to travel to the states where the lawsuits were filed. However, the affidavit Hartwig submitted in opposition to Kanner's motion to dismiss stated that 75% of the contract was performed in Wisconsin. Kanner failed to

---

**3.** It is of little consequence that Kanner did not enter the state of Wisconsin in relation to his business dealings with Hartwig after initially meeting Hartwig in Madison. Physical presence in a state is a relevant consideration in contract cases. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1213 (7th Cir.1984). However, it is clear that the lack of presence in the forum state is not determinative of personal jurisdiction. *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Heritage House,* 906 F.2d at 283. In *Burger King,* the Supreme Court

stated that jurisdiction "may not be avoided merely because the defendant did not *physically* enter the forum State" as long as the defendant's "efforts are 'purposefully directed' toward residents of" that state. 471 U.S. at 476, 105 S.Ct. at 2184 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)) (emphasis in the original). The contract at issue in this case was naturally based on telephone and mail contacts rather than Kanner's physical presence in Wisconsin. Kanner should not be allowed to avoid jurisdiction because of this distinction. *See Heritage House,* 906 F.2d at 283.

present the district court with any evidence to the contrary.

Kanner purposely availed himself of the protections and the benefits of the laws of Wisconsin. Accordingly, the district court's exercise of personal jurisdiction over Kanner was consistent with the dictates of due process.

### Directed Verdict

Hartwig agreed to perform consulting and expert witness services for Kanner at an hourly rate plus reimbursement for expenses. Hartwig billed Kanner at a rate of $60 per hour for general consulting, field work and investigative work, and $100 per hour (initially $80 per hour) for in-court testimony and deposition work. Hartwig informed Kanner of the fee schedule and the billing rates in writing. As services were rendered, Hartwig prepared and submitted invoices to Kanner. After Kanner failed to pay several invoices, Hartwig and a number of his employees contacted members of Kanner's staff to inquire about past due payments. Kanner's staff explained that Kanner simply did not have the money to pay the bills but that they would paid as soon as possible.

Ultimately, Hartwig requested Kanner to execute some promissory notes evidencing his obligation to Hartwig. In September, 1986, Kanner executed three promissory notes, one for each lawsuit in which Hartwig had provided services. The promissory notes provided for payment of interest at a rate of 18% per annum if not paid on the dates set forth in the notes. The notes also provided that Kanner would pay Hartwig reasonable attorney fees incurred in collecting payment. After Kanner executed the notes, Hartwig performed additional services for Kanner worth $6,827.78. Kanner never paid Hartwig for his services.

Hartwig brought a breach of contract suit against Kanner to recover payment for services rendered and attorney fees incurred in collecting payment. At the close of all the evidence, the district judge directed a verdict in favor of Hartwig in the amount of $44,225.04—$40,-725.04 for consulting services and interest, and $3,500 for attorney fees pursuant to the terms of the promissory notes. Kanner argues that the district court was precluded from granting a directed verdict in favor of Hartwig because there was a material issue of fact as to whether the contract was void due to various misrepresentations Hartwig made to Kanner prior to entering into the contract.

The evidence indicated that the resume Hartwig sent to Kanner stated that Hartwig had received a Bachelor of Science degree in 1971, and a Master of Science degree "ABT." However, Hartwig actually received a Bachelor of Arts degree not a Bachelor of Science degree; in addition, he received the degree in 1975, not 1971. Moreover, Hartwig intended the initials "ABT" to stand for "all but thesis," meaning that Hartwig had not written his thesis and, therefore, did not actually have a masters degree at the time he sent Kanner his resume. When Hartwig testified as an expert witness during Kanner's trial in California—the *Aerojet* trial—Hartwig expressed uncertainty on the stand as to whether he had a Bachelor of Arts or a Bachelor of Science degree or what year he received his degree. In addition, the fact that Hartwig had not completed his masters degree was also brought out during Hartwig's testimony in *Aerojet.*

The evidence also indicated that Hartwig was the principal owner of another company, American Environmental Control, which performed asbestos removal jobs for the state of Wisconsin. At one time, Hartwig Associates held a contract with the state of Wisconsin to supervise and inspect asbestos removal being done by American Environmental. Hartwig never told Kanner about these contracts. Although Hartwig Associates eventually backed out before performing the supervision contract, attorneys at the *Aerojet* trial brought out the fact that Hartwig entered into contracts that created an obvious conflict of interest.

At trial, Hartwig admitted that there were inaccuracies in his resume. However, Hartwig testified that he explained his educational background in detail to Kanner

and his associates including the fact that he had not completed a masters degree. Hartwig also testified that he told Kanner about his interest in American Environmental Control but that there was no need to tell Kanner about any potential conflict of interest because Hartwig Associates never intended to perform its supervision contract. Kanner chose not to appear in the district court at Madison, Wisconsin, for the trial of the case now before us. His counsel appeared but in his case in chief, he presented no witnesses and offered only a single document into evidence.

■ A motion for a directed verdict raises only a question of law; thus, our review is *de novo*. *Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 515 (7th Cir.1990); *Bandura v. Orkin Exterminating Co., Inc.*, 865 F.2d 816, 819–20 (7th Cir.1988); *North v. Madison Area Ass'n for Retarded Citizens*, 844 F.2d 401, 403 (7th Cir.1988); *Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir.1988). Because the district court's jurisdiction was based on diversity of citizenship, the test for granting a directed verdict is supplied by the law of the forum state, here Wisconsin. *Krist v. Eli Lilly and Co.*, 897 F.2d 293, 296 (7th Cir.1990); *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1548–49 (7th Cir.1990); *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1220 (7th Cir.1988); *Cincinnati Ins. Co. v. Taylorville*, 818 F.2d 1345, 1348 (7th Cir.1987). In determining whether a directed verdict should be granted under Wisconsin law, the evidence is viewed in the light most favorable to the party against whom the motion is made. A court should direct a verdict only if there is no credible evidence to sustain a verdict in favor of the party against whom the motion was made. Wis.Stat. § 805.14(1); *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis.2d 94, 108–11, 362 N.W.2d 118, 127 (1985); *Millonig v. Bakken*, 112 Wis.2d 445, 449–51, 334 N.W.2d 80, 83 (1983); *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis.2d 882, 897–99, 275 N.W.2d 915, 922 (1979); *Thompson v. Howe*, 77

Wis.2d 441, 448–50, 253 N.W.2d 59, 62 (1977).

Kanner's only defense to Hartwig's contract action is based on a claim that Hartwig misrepresented his educational background in his resume and that Hartwig did not inform Kanner of the conflict of interest between Hartwig's two companies. At trial, Hartwig testified that he told Kanner about inaccuracies in his resume; in addition, Hartwig testified that he told Kanner about the relationship between his two companies and truthfully represented to Kanner that his ownership of both companies did not create a conflict of interest. Kanner presented no evidence at trial to rebut Hartwig's testimony. Nonetheless, Kanner points out that it is the province of the jury to determine the credibility of interested witness testimony. Kanner argues that a jury could have disbelieved Hartwig's testimony that he told Kanner about inaccuracies on his resume and that he told Kanner about the relationship between his companies. Kanner further argues that this credibility determination amounted to a material issue of fact as to whether Hartwig made misrepresentations that voided the contract. We disagree.

■ Kanner failed to submit the necessary evidence to support a verdict contrary to that sought by Hartwig. Even if the jury disbelieved Hartwig's testimony and found that Hartwig made material misrepresentations to Kanner, Kanner still would not have carried his burden of establishing a defense. Misrepresentation alone does not amount to a defense. Under Wisconsin law, a defendant who seeks to render a contract voidable due to fraudulent misrepresentation must prove the following elements: (1) a material misrepresentation; (2) reliance on the misrepresentation; and (3) injury or damage due to reliance on the misrepresentation. *Lundin v. Shimanski*, 124 Wis.2d 175, 181–86, 368 N.W.2d 676, 680–81 (1985); *Merten v. Nathen*, 108 Wis.2d 205, 209 n. 2, 321 N.W.2d 173, 176 n. 2 (1982).[4] In addition, the party alleging

---

**4.** There is no dispute that Wisconsin law governs Hartwig's breach of contract claim and Kanner's defenses to that claim.

fraud has the burden of proving the elements by clear and convincing evidence. *Kensington Dev. Corp. v. Israel,* 142 Wis.2d 894, 903–05, 419 N.W.2d 241, 245 (1988); *Lundin,* 124 Wis.2d at 184–86, 368 N.W.2d at 681.

Kanner failed to present any evidence demonstrating that he relied on Hartwig's misrepresentations. For example, Kanner did not present evidence that Hartwig's educational credentials were critical to his decision to hire Hartwig. More important, Kanner failed to present any evidence that demonstrated how he was damaged by the misrepresentations—Kanner presented no evidence that Hartwig erroneously consulted Kanner and that the erroneous consultation changed the result Kanner would have obtained in litigation; nor did Kanner present evidence that Hartwig's services were somehow rendered valueless because of Hartwig's misrepresentations. At oral argument, Kanner told us that he lost the *Aerojet* trial and that Hartwig's poor performance on the witness stand was a contributing factor to this loss. This revelation came too late and was presented to the wrong court. Kanner's oral argument "testimony" would have obviously served him better before the jury rather than before this court.

This was a simple debt collection case. The amount sought to be recovered was not in dispute. Kanner's indebtedness was plainly evidenced by promissory notes executed by Kanner. At trial, Hartwig testified that Kanner never complained about the quality of Hartwig's work or raised any issue of being misled or damaged by Hartwig's credentials. The only reason Kanner ever gave for failing to pay Hartwig was a lack of funds. Kanner had the burden of proving a defense to the contract—a task made nearly impossible by his choice not to appear for trial or present any witnesses. Kanner simply failed to present any evidence of reliance on Hartwig's misrepresentations or of a causal link between the misrepresentations and a loss he suffered. Accordingly, the district court did not err in directing a verdict in favor of Hartwig.

## Denial of Continuance

██] Hartwig filed his complaint on July 27, 1987. On October 9, 1987, Kanner filed his motion to dismiss for lack of personal jurisdiction. On October 14, 1987, the district court entered a scheduling order setting the trial date for February 4, 1988. The district court denied Kanner's motion to dismiss for lack of personal jurisdiction on December 29, 1987. On January 27, 1988, Kanner filed a motion asking the court to extend discovery and reschedule the trial date. This motion was also denied. Trial commenced on February 5, 1988 and the district court entered a directed verdict on the same day.

Kanner argues that he was denied due process because the district court declined to grant his motion to postpone the trial and extend discovery. According to Kanner, the court imposed an extremely condensed schedule and as a result, he did not have an opportunity to conduct discovery or adequately prepare for trial. Kanner claims he needed more time for discovery because the court's consideration of his motion to dismiss for lack of personal jurisdiction consumed substantially all of the pre-trial calendar. During the time Kanner's motion to dismiss was pending, Kanner admittedly did not engage in discovery. Kanner claims that this decision to forego discovery was proper. Specifically, Kanner reasons that if the court had granted his motion to dismiss, any discovery he undertook might have been wasted because there was no guarantee that Hartwig would have refiled his suit in Pennsylvania.

 The decision to grant or deny a motion for continuance falls within the sound discretion of the trial court. *Matter of Narowetz Mechanical Contractors, Inc.,* 898 F.2d 1306, 1309 (7th Cir.1990); *Afram,* 772 F.2d at 1366. Matters of trial management are for the district judge; thus, we will intervene only when it is apparent that the judge has acted unreasonably. *Northern Ind. Pub. Serv. Co. v. Carbon County Coal Co.,* 799 F.2d 265, 269 (7th Cir.1986). Generally, the common thread in the rare cases that reverse the denial of a continuance is the existence of

changed circumstances to which a party cannot reasonably be expected to adjust without an extension of time. *Id.* The typical "changed circumstances" include illness of a key witness, illness of counsel on the eve of trial, or newly discovered evidence. *Id.* at 269–70; *Afram,* 772 F.2d at 1366. On the other hand, where there are no changed circumstances and a litigant fails to take advantage of opportunities to conduct discovery, this court has upheld the denial of additional time to conduct discovery. *See United States v. Antioch Foundation,* 822 F.2d 693, 697 (7th Cir. 1987).

The denial of Kanner's motion to postpone the trial and extend discovery was neither an abuse of discretion nor a denial of due process. Kanner's contentions appear to be nothing more than a plea to this court to reverse the consequences of Kanner's tactical decisions. Kanner deliberately chose not to engage in discovery during the pendency of his motion to dismiss. However, Kanner did not file a request to stay discovery during the time the court was considering his motion to dismiss. Kanner stated in his brief that "it is a federal practice based on efficiency and economy to not proceed with discovery when there is a dispositive issue such as jurisdiction that has not been resolved." Not surprisingly, Kanner failed to cite any authority for this proposition. We know of no statute, case law, local rule or custom in the Seventh Circuit that condones such a practice. The proper course of action is to request that the district court enter a stay of discovery until all jurisdictional issues are decided; it is not proper to unilaterally forego discovery and then expect the trial court to change its trial calendar if it finds that personal jurisdiction is proper. By failing to request a stay of discovery, Kanner relied to his own detriment on an assumption that he would prevail on his motion to dismiss.

More important, Kanner waited an entire month until after the district court denied his motion to dismiss before he asked the court to postpone the trial date and extend discovery. From the time the court denied the motion to dismiss (December 29, 1987) until the time Kanner requested a continuance (January 27, 1988), Kanner made no effort to conduct discovery. He has offered no valid reason for not doing so. Kanner's motion before the district court did not allege any changed circumstances to which he could not reasonably be expected to adjust without an extension of time. Nor did Kanner contend that he attempted to engage in discovery but that he needed more time to locate potential witnesses or documents due to extenuating circumstances.

Finally, we note that once the district court denied Kanner's motion for a continuance, Kanner still had approximately one week to conduct some discovery; yet, he declined to do so even at that point. Kanner claims that he was "surprised" by Hartwig's trial testimony to the effect that Hartwig told Kanner about the inaccuracies in his resume and explained the relationship between Hartwig Associates and American Environmental Control. Hartwig argues that this surprise testimony "underscores" the need to have had further discovery. However, it is apparent that a simple deposition of Hartwig was the only discovery necessary to avoid any surprises in Hartwig's testimony. In a rather uncomplicated debt collection case such as this, it is hard to imagine that a deposition of Hartwig would have taken more than one day. Yet, in the four months between the time the district court set the trial date up until the actual trial, Kanner did not even attempt to depose Hartwig. Unwise tactical decisions such as this are not the type of occurrence for which we reverse trial courts on appeal. Accordingly, the district court did not err in denying Kanner's motion to postpone the trial and extend discovery.

For the foregoing reasons, the decision of the district court is AFFIRMED.