Robert L. Swanson, DeMark, Kolbe & Brodek, Racine, Wis., for plaintiff.

Ralph A. Weber, Kravit, Gass & Weber, Milwaukee, Wis., for defendant.

**MAMCO CORPORATION, Plaintiff,**

v.

**MAX BUCHANAN CO., INC., Defendant.**

### Civ. A. No. 91–C–802.

United States District Court,
E.D. Wisconsin.

May 26, 1992.

### DECISION AND ORDER

REYNOLDS, Senior District Judge.

Presently before this court is defendant Max Buchanan Co., Inc.'s August 2, 1991 motion to dismiss this action for lack of personal jurisdiction. For the reasons below, this court denies the motion.

### BACKGROUND

On June 14, 1991, plaintiff Mamco Corporation ("Mamco") commenced this breach-of-contract action in the Circuit Court of

---

Racine County, Wisconsin, alleging that defendant Max Buchanan Co., Inc. ("Buchanan Co.") owed it (1) a balance of $55,790.04 for small electric motors that Mamco had specially designed, assembled, and shipped to Buchanan Co. in partial fulfillment of Buchanan Co.'s April 3, 1990 purchase order for 80,000 motors, and (2) $389,784.00 for the additional 44,700 motors that Mamco was prepared to manufacture and ship pursuant to that purchase order (Compl. ¶¶ 3–6). On July 15, 1991, Mamco served a copy of the summons and complaint upon Buchanan Co. On July 23, 1991, Buchanan Co. properly removed the action to this court pursuant to Title 28 United States Code § 1446(b), on the ground that this court would have original jurisdiction over the action pursuant to 28 U.S.C. § 1332(a).

On August 2, 1991, Buchanan Co. filed the instant motion to dismiss this action for lack of personal jurisdiction.

## JURISDICTIONAL FACTS

Plaintiff Mamco is a Wisconsin corporation located in Franksville, Wisconsin, which manufactures specially-designed electric motors (Aug. 15, 1991 Ronald B. Meltzer Aff. ("Meltzer Aff.") ¶ 2). Defendant Buchanan Co. is a Missouri corporation which has its principal office in Springfield, Missouri, and which assembles and sells small personal massagers (Jul. 30, 1991 Max Buchanan Aff. ("Buchanan Aff.") ¶ 2). Buchanan Co. has never been licensed to do business in Wisconsin; has no offices or employees in the state; owns no real estate or personal property located within the state; and maintains no telephone listings or post office boxes in the state (Buchanan Aff. ¶ 2).

After learning of Mamco through the Thomas Registry, a trade directory of domestic motor manufacturers, Buchanan Co. president Max Buchanan ("Buchanan") contacted Mamco vice-president Ronald B. Meltzer ("Meltzer") in late 1988 or early 1989 to inquire as to whether Mamco would be interested in manufacturing a small electric motor for use in one of Buchanan Co.'s massagers (Meltzer Aff. ¶ 3; Buchanan Aff. ¶ 4). Meltzer states that Buchanan personally visited Mamco's Franksville, Wisconsin plant in early 1989 to engage in preliminary discussions about the motor-manufacturing deal (Meltzer Aff. ¶ 3). According to Meltzer, he and Buchanan discussed the motor's specifications, the number of motors to be manufactured, the dates on which the motors were to be shipped, the price of the motors, and Buchanan Co.'s ability to pay for the motors (Id.). Meltzer further states that he showed Buchanan Mamco's Franksville plant and informed Buchanan that the motors would be manufactured in that Wisconsin plant (Id.). Buchanan states that he never visited Mamco's plant in late 1988 or 1989, but he admits that he negotiated the purchase of Mamco motors around this time through mail and phone contacts (Aug. 28, 1991 Buchanan Supp. Aff. ("Buchanan Supp. Aff.") ¶ 1).

Buchanan then sent to Mamco's Franksville plant a few motors, and he requested Mamco to send him a price quote for producing motors of similar size and performance (Meltzer Aff. ¶ 5). Meltzer states that Mamco tested Buchanan's sample motors on March 2, 1989, and by March 8, 1989, had assembled and tested its own specially-designed prototype motor (Id. ¶¶ 5, 6). On March 10, 1989, Mamco sent its prototype motors to Buchanan Co.'s Springfield, Missouri plant. On or about March 20, 1989, Buchanan Co. ordered 50,000 motors from Mamco at a price of $8.72 each, and on or about March 31, 1989, Buchanan Co. advised Mamco of the schedule under which the motors were to be shipped (Id. ¶ 7, Ex. 2, 3). Mamco fully satisfied Buchanan Co.'s March 20, 1989 order, making its last shipment of motors under the order on July 31, 1990 (Id. ¶ 7). Buchanan Co. paid for all the motors shipped under the March 20, 1989 order, and that order is not the subject of this dispute (Id.).

On July 28, 1989, Buchanan visited Mamco's Franksville plant (Id. ¶ 8; Buchanan Aff. ¶ 8). Mamco's Meltzer states that Buchanan made the trip in part to inquire whether Mamco could ship motors in installments larger than those required in the March 20, 1989 contract (Meltzer Aff. ¶ 8).

Buchanan denies this, stating that he "basically" made the visit at Mamco's invitation and that no business activities or negotiations took place during the visit (Buchanan Aff. ¶ 8). Buchanan briefly toured Mamco's factory and had dinner with Meltzer; on the next day, Buchanan and Meltzer played golf together (Meltzer Aff. ¶ 9; Buchanan Aff. ¶ 8; Buchanan Supp. Aff. ¶ 2).

On or about April 3, 1990, Mamco received Buchanan Co.'s purchase for 80,000 additional motors at $8.72 each (Buchanan Aff. ¶ 11). As under the March 20, 1989 arrangement, Mamco received certain parts for the motors from Buchanan Co.'s suppliers, incorporated them into Mamco's motors, and shipped the completed units to Buchanan Co. according to an agreed schedule (*Id.*, Ex. 4). In October 1990, Buchanan made an unannounced visit to Mamco's plant to discuss possible defects in the motors and changes to the shipping schedule (Meltzer Aff. ¶ 12; Buchanan Aff. ¶ 8).

Mamco has shipped 35,300 motors to Buchanan Co. pursuant to the April 3, 1990 purchase order (Meltzer Aff. Ex. 4 at 3–4). Mamco claims that Buchanan Co. owes it (1) an unpaid balance of $55,790.04 on the purchase price of the 35,300 electric motors, and (2) $389,784.00 in lost expected profits on the additional 44,700 motors that Mamco was allegedly prepared to manufacture and ship pursuant to the April 3, 1990 purchase order (Compl. ¶¶ 4–6).

Other than the business activities that gave rise to this lawsuit, Buchanan Co. has other limited business contacts with Wisconsin. In June 1991, Buchanan Co. purchased a Tulsa, Oklahoma-based motor manufacturer, which purchased material from two non-party Wisconsin companies during July 1991 (Buchanan Supp. Aff. ¶ 5; Meltzer Aff. ¶ 13, Ex. 5, 7, 11).

### ANALYSIS

A federal district court in Wisconsin has personal jurisdiction over a party in a diversity action only if the Wisconsin long-arm statute, Wis.Stat. § 801.05, authorizes jurisdiction and if the exercise of jurisdiction is permissible under the due process clause to the fourteenth amendment of the federal constitution. *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990).

Plaintiff Mamco bears the burden of establishing that nonresident Buchanan Co. is subject to suit in this state under the long-arm statute. *State ex rel. N.R.Z. v. G.L.C.*, 152 Wis.2d 97, 104, 447 N.W.2d 533 (1989). Nonetheless, because this court is deciding Buchanan Co.'s motion solely on the basis of the parties written materials, Mamco need only show a prima facie case for personal jurisdiction and is entitled to have all inferences about material jurisdictional facts resolved in its favor. *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods.*, 619 F.2d 676, 677 (7th Cir.1980). This court must also construe the long-arm statute liberally in favor of the exercise of jurisdiction, because the Wisconsin legislature intended the statute to extend jurisdiction to the fullest extent permitted under the due process clause. *N.R.Z.*, 152 Wis.2d at 105, 447 N.W.2d 533; *Schroeder v. Raich*, 89 Wis.2d 588, 593–94; 278 N.W.2d 871 (1979).

The Wisconsin long-arm statute authorizes the exercise of jurisdiction here, because the action "[r]elates to goods ... shipped from this state by the plaintiff to the defendant on the defendant's order or direction...." Wis.Stat. § 801.05(5)(d); *see also Sub–Zero Freezer Co. v. R.J. Clarkson Co.*, 159 Wis.2d 230, 234 (Ct.App. 1990).

This court's exercise of jurisdiction also comports with due process requirements. Compliance with the Wisconsin long-arm statute raises a rebuttable presumption that the exercise of jurisdiction pursuant to this statute is consistent with due process requirements. *N.R.Z.*, 152 Wis.2d at 104, 447 N.W.2d 533; *Brunswick Corp. v. Suzuki Motor Co.*, 575 F.Supp. 1412, 1417 (E.D.Wis.1983). A nonresident defendant may rebut this presumption by demonstrating that it has insufficient contacts with Wisconsin to subject it constitutionally to suit within this state. *N.R.Z.*, 152 Wis.2d at 104, 447 N.W.2d 533. Buchanan Co. has failed to make such a demonstration.

The due process clause of the fourteenth amendment requires that a nonresident defendant have at least "minimum contacts" with the forum state such that the exercise of jurisdiction over it is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Jurisdiction can be constitutionally asserted only if the nonresident defendant by some act "purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The benchmark for exercising personal jurisdiction over a nonresident defendant is the "foreseeability" of his being subjected to suit in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." *Id.* Accordingly, "random," "fortuitous," or "attenuated" contacts by the nonresident defendant or unilateral activities by the resident plaintiff do not satisfy the minimum contacts requirement. *Burger King*, 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

Several factors compel the conclusion that Buchanan Co. could reasonably foresee being subject to suit in a Wisconsin court.

Most significantly, Buchanan Co. initiated both the parties' business relationship and the April 3, 1990 contract at issue here. *See Kanner*, 913 F.2d at 1218; *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir.1985). Although a single contract between a nonresident buyer and a resident seller, without more, would not constitute purposeful availment of the privilege of conducting business within the forum, *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980),[1] Buchanan Co.'s active initiation of several important steps in the parties' business relationship, particularly the April 3, 1990 purchase order, amounts to a purposeful availment sufficient to satisfy due process requirements. *See Madison Consulting Group*, 752 F.2d at 1202–03;[2] *Wisconsin Elec. Mfg. Co. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir.1980).[3]

1. In *Lakeside*, the Seventh Circuit Court of Appeals held that a nonresident defendant's mere acceptance of a Wisconsin plaintiff's offer for the sale of goods, along with related exchanges of letters and phone calls, was not sufficient to confer personal jurisdiction over the defendant in a Wisconsin court, even though the defendant knew that the products at issue would be manufactured in Wisconsin. 597 F.2d at 604. The court reasoned that the contract at issue permitted the Wisconsin plaintiff to choose where the contract would be performed, such that the nonresident defendant did not purposefully avail itself of the opportunity to conduct business activities within Wisconsin. *Id.* at 603.

2. In *Madison Consulting*, the nonresident defendant contacted and ultimately retained the plaintiff Wisconsin consulting firm to perform consulting services; the nonresident defendant had no jurisdictionally significant contacts other than those arising from the consulting contract. 752 F.2d at 1194. The Seventh Circuit Court of Appeals held that Wisconsin had personal jurisdiction over the nonresident defendant primarily because the defendants actively solicited the contract by contacting the plaintiff to initiate the negotiations and by inviting a member of the plaintiff's firm to travel to Washington, D.C., to negotiate the contract. *Id.* at 1202–03. *See also Kanner*, 913 F.2d at 1219 (discussing *Madison Consulting* holding).

3. Like *Lakeside Bridge* and *Madison Consulting*, *Pennant Products* was also a breach of contract case arising out of a nonresident defendant's contract with a Wisconsin plaintiff. In *Pennant Products*, the defendants' agents solicited the contract at issue by making two visits to Wisconsin relating to the creation and performance of the contract. The Seventh Circuit Court of Appeals held that the two visits distinguished the case from *Lakeside* and authorized the exercise of personal jurisdiction, because through their visits to Wisconsin the defendants had purposefully availed themselves of the privileges of conducting business within Wisconsin. 619 F.2d at 677–78.

Buchanan Co. initiated the parties' business relationship in late 1988 or early 1989 either when (according to Mamco) Buchanan personally visited Mamco's Wisconsin plant or (according to Buchanan Co.) when Buchanan contacted Mamco by letters or phone calls. The parties' dispute about whether Buchanan personally visited the state at that time is immaterial; the undisputed pertinent fact is that Buchanan Co. took steps to initiate the relationship. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *see also Madison Consulting Group*, 752 F.2d at 1203–04 (court declined "to create a rule that would require a defendant to step across state lines as a predicate for personal jurisdiction").

Buchanan Co. thereafter took other steps to extend the parties' business dealings. In early March 1989, Buchanan Co. requested Mamco to develop a prototype motor. On or about March 20, 1989, Buchanan Co. ordered 50,000 of Mamco's specially-designed motors, and directed Mamco to deliver the motors in installments extending over a fourteen-month period. Mamco made deliveries pursuant to this contract through July 31, 1990, which Buchanan Co. accepted. Buchanan also visited Mamco's Franksville plant on July 28, 1989. Buchanan Co. then placed its April 3, 1990 order for 80,000 additional motors, and again requested delivery over a several-month period. Mamco has already shipped 35,300 motors under that order. In October 1990, Buchanan paid another visit to Mamco's plant to suggest possible changes to Mamco's manufacturing process and to the shipping schedule. Even if the Buchanan's July 28, 1990 visit was for Mamco's convenience and therefore would not constitute a significant contact with Wisconsin, his October 1990 visit contributed to his company's efforts to have the contract with Mamco satisfactorily performed. The visit therefore constitutes an additional contact supporting this court's exercise of jurisdiction over Buchanan Co. *See Kanner*, 913 F.2d at 1219 & n. 3; *Pennant Products*, 619 F.2d at 677–678.

Buchanan Co.'s activities in Wisconsin extend beyond its acts of solicitation and its president's visits to the state. As Mam-

co advised Buchanan Co., Mamco's performance of the contract took place in Wisconsin. Although not dispositive, this factor constitutes an additional significant contact between Buchanan Co. and Wisconsin. *See Madison Consulting Group*, 752 F.2d at 1204. Buchanan Co. has also had other dealings with two other Wisconsin companies: it purchased materials from those companies in July 1991, over one month after this suit was filed. These purchases are also not dispositive, but they are further purposeful contacts with this forum. *See Kanner*, 913 F.2d at 1219.

Thus, for over one year, Buchanan Co. continuously initiated contacts with Mamco which led to the April 3, 1990 purchase order. The purchase order also called for Mamco to continue manufacturing motors for several more months. Buchanan Co. thus created "continuing obligations" between itself and Wisconsin resident Mamco, *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84, and thereby "manifestly avail[ed] [itself] of the privilege of conducting business" within this state. *Kanner*, 913 F.2d at 1219. Its contacts with Wisconsin are therefore neither random, fortuitous, nor attenuated; rather, they were "purposely directed ... towards a resident of Wisconsin to such a degree that [Buchanan Co.] could reasonably foresee being subjected to the jurisdiction of a Wisconsin court." *Id.*

This court's exercise of personal jurisdiction over Buchanan Co. is therefore consistent with the requirements of due process.

IT IS THEREFORE ORDERED that defendant Max Buchanan Co., Inc.'s August 2, 1991 motion to dismiss this action for lack of personal jurisdiction is DENIED.