In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1141

LEXINGTON INSURANCE COMPANY,

*Plaintiff-Appellant*,

*v.*

HOTAI INSURANCE COMPANY, LTD., and
TAIAN INSURANCE COMPANY, LTD.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin, Madison Division.
No. 3:16-cv-740 — **James D. Peterson**, *Chief Judge*.

ARGUED NOVEMBER 27, 2018 — DECIDED SEPTEMBER 12, 2019

Before BAUER, HAMILTON, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Zurich Insurance (Taiwan), Ltd.,
and Taian Insurance Company, Ltd., are insurance companies

based in Taiwan.[1] Each provided worldwide products-liability insurance coverage to two Taiwanese companies that supplied parts and inventory to Trek Bicycle Corporation, which is based in Wisconsin. As part of their agreements with the Taiwanese companies, Zurich and Taian both recognized Trek as an additional insured covered by their policies.

On the basis of that additional-insured status, Trek's primary insurer, Lexington Insurance Company, which is based in Massachusetts, sued Zurich and Taian in Wisconsin seeking indemnification for a products-liability settlement paid on Trek's behalf involving an accident that took place in Texas. The district court correctly concluded that it lacked personal jurisdiction over Zurich and Taian, so we affirm its dismissal of the case.

## I.

Trek, a bicycle manufacturer, maintains its corporate offices in Waterloo, Wisconsin. It is party to two purchase order agreements, both with Taiwanese companies, that are relevant to this appeal. One is an agreement with Giant Manufacturing Company to purchase bicycles that Trek markets and sells under its own brand name. The other is an agreement to purchase bicycle parts from Formula Hubs, Inc.

Giant's purchase order agreement with Trek required it to have Trek named as an additional insured in its products-liability insurance policy with Zurich, a Taiwanese insurer. Under that policy, Zurich agreed to indemnify Giant and its

---

[1] Both companies are organized under the laws of the Republic of China, and each has its principal place of business in Taipei, Taiwan. Zurich now operates under the name "Hotai Insurance Co., Ltd.," but we refer to it as Zurich for clarity and consistency with the record.

listed vendors, including Trek, for judgments, expenses, and legal costs incurred "worldwide." In addition, the Zurich policy (1) allowed Zurich to control the litigation or settlement of a covered claim but did not require it to do so; (2) included a Taiwanese choice of law provision; and (3) required disputes between Zurich and its insureds regarding the policy to be resolved by arbitration in Taiwan.[2]

Trek's purchase order with Formula involved a similar insurance arrangement. In it, Formula agreed to have Trek included as an additional insured in its products-liability insurance policy with Taian, another Taiwanese insurer. Under the policy, Taian agreed to indemnify Formula and its vendors, including Trek, for liability and defense costs incurred "worldwide." Like the Zurich policy, the Taian policy gave Taian the right but not the obligation to control the litigation of a covered claim against an insured. Finally, it dictated that disputes concerning the policy would be subject to Taiwanese law and would have to submit to the jurisdiction of a Taiwanese court.

In 2012, John Giessler, a Louisiana resident, was seriously injured while riding a rented Trek bicycle in Travis County, Texas. During his ride, the front wheel detached from the frame of the bicycle, Giessler fell, and the resulting injuries rendered him a quadriplegic. Giessler, his wife, and his son sued Trek, among others, in Texas. Although Giant had manufactured the bicycle that Giessler was riding, and Formula had manufactured the front-wheel release, neither was a party to Giessler's lawsuit.

---

[2] Lexington participated in arbitration proceedings with Zurich in Taiwan, but the arbitrator ultimately decided that its claim was time-barred.

Lexington Insurance Company, which insures Trek through comprehensive general liability and commercial umbrella policies, defended Trek in the Giessler suit. Trek and Lexington attempted to notify Giant and Formula—and their respective insurers, Zurich and Taian—of Giessler's lawsuit. In the end, though, the case settled, and Lexington paid Giessler on Trek's behalf. Lexington sought reimbursement from Zurich and Taian; after they refused to pay, it sued them in the Western District of Wisconsin. It argued that both were obligated to indemnify Trek under their respective insurance policies with Giant and Formula. And presenting theories of contribution and equitable subrogation, Lexington contended that the Taiwanese insurers must pay it the money that they owed Trek.

Both Zurich and Taian moved to dismiss the case for lack of personal jurisdiction and improper venue. With respect to the former, the insurers argued, among other things, that they lacked the necessary minimum contacts with Wisconsin to justify the district court's exercise of jurisdiction over them— these policies were contracts between Taiwanese companies, drafted and signed in Taiwan, and governed by Taiwanese law. In response, Lexington contended that the worldwide coverage provisions and the inclusion of Trek as an additional insured in each policy constituted sufficient contacts with the state of Wisconsin to satisfy due process. The district court held that it lacked personal jurisdiction over the Taiwanese insurers, and Lexington appeals.

## II.

A federal court may exercise personal jurisdiction over a foreign defendant only to the extent permitted by the forum

state's long-arm statute and by the Due Process Clause. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The parties agree that Wisconsin's long-arm statute, Wis. Stat. § 801.05, reaches Zurich and Taian.[3] The only question is whether the exercise of jurisdiction over the defendants satisfies the Due Process Clause.

To satisfy due process, a defendant's physical presence within the state is not required. *Walden v Fiore*, 571 U.S. 277, 283 (2014). But a foreign defendant "generally must have 'certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, the defendant's relationship with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *Felland*, 682 F.3d at 673 (citation omitted).

Personal jurisdiction takes two forms—general and specific. General jurisdiction is all-purpose; it permits a defendant to be sued in a forum for *any* claim, regardless of whether the claim has any connection to the forum state. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011). For a state to have such extensive jurisdiction over a defendant, however, the defendant's contacts must be "so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Id.* (citation omitted). Lexington does not contend

---

[3] Wis. Stat. § 801.05(10) grants personal jurisdiction over a defendant "[i]n any action which arises out of a promise made anywhere to the plaintiff or some third party by the defendant to insure upon or against the happening of an event and in addition … the person insured was a resident of this state when the event out of which the cause of action is claimed to arise occurred."

that either Zurich or Taian is "at home" in Wisconsin. Instead, it argues that the federal district court in Wisconsin has specific jurisdiction over the insurers. Specific jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citation omitted).

Specific jurisdiction has three "essential requirements." *Felland*, 682 F.3d at 673. First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Id.* Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. *Id.* And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Id.*

We begin with whether Zurich and Taian "purposefully availed [themselves] of the privilege of conducting business in the forum state or purposefully directed [their] activities at" Wisconsin. *See id.* To answer this question, we look to see if there are "'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citing *Int'l Shoe*, 326 U.S. at 316). The Supreme Court has emphasized that this analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden,* 571 U.S. at 285. The Due Process Clause protects a defendant from being forced to submit to the adjudicatory authority of a state with which it has not purposefully established a sufficient connection—and deliberate contact with the resident of a state is not the same thing as deliberate contact with the state itself. *Id.* at 285–86; *see also Advanced Tactical Ordnance Sys.,*

*LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). While the merits of this case turn on Zurich and Taian's relationship with Trek, personal jurisdiction turns on their relationship with Wisconsin.

Lexington has failed to demonstrate that either Zurich or Taian made any purposeful contact with Wisconsin before, during, or after the formation of the insurance contracts. They did not solicit Trek's business or target the Wisconsin market. *See Int'l Shoe*, 326 U.S. at 314 (defendant had salesmen in the forum exhibiting samples and soliciting orders from potential buyers); *see also Daniel J. Hartwig Assocs. v. Kanner*, 913 F.2d 1213, 1218–19 (7th Cir. 1990) (whether the defendant solicited the plaintiff's services is "significant" in the minimum-contacts analysis). They negotiated and drafted these contracts in Taiwan with Taiwanese companies. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 467 (1985) (defendants negotiated with Burger King's headquarters, which were located in the forum state). Both policies required disputes to be resolved in Taiwan according to the laws of Taiwan. *Cf. id.* at 465–66 (contract dictated that the relationship between the parties be governed by the law in the forum state). Zurich and Taian did not visit Wisconsin or contact anyone residing there. *Cf. id.* at 466, 468 (defendant attended management courses in the forum state in addition to communicating with headquarters in the forum state by mail and telephone). Indeed, Lexington points to no evidence that Zurich or Taian ever sent anything—even a copy of either insurance policy—to Wisconsin.[4] *Cf. Walden*,

---

[4] While the record contains a certificate reflecting Taian's insurance of Trek under the Formula policy, Lexington is conspicuously quiet about how and from whom Trek obtained this certificate. Lexington had to make out a prima facie showing of the court's jurisdiction over the defendants, *see Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83

571 U.S. at 289 ("Petitioner never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada. In short, when viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—petitioner formed no jurisdictionally relevant contacts with Nevada."). For personal jurisdiction to exist, "[t]he record must show that the defendants targeted the forum state." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). The record in this case does not show that either insurer targeted Wisconsin.

Notwithstanding all of this, Lexington contends that two provisions in the insurance policies constitute sufficient contacts with the state of Wisconsin to satisfy the demands of due process. Both contracts acknowledged Trek as an additional insured and extended coverage for liabilities incurred "worldwide." But neither of these provisions constitutes a contact with the state of Wisconsin, so they do not singly or together provide a basis for personal jurisdiction.

We can easily dispose of the first argument because it flatly contradicts Supreme Court precedent. The fact that Zurich and Taian may be liable to Trek does not give Wisconsin jurisdiction over them. As we have already explained, it is a

---

(7th Cir. 2003), so this lack of proof means that we cannot treat the certificate as evidence of Taian's purposeful contact with Wisconsin. That said, the result would not change even if we assume that Taian (rather than, for example, Formula) sent the certificate to Trek in Wisconsin. One mailing to an in-state resident is not enough to submit the sender to the jurisdiction of the state. *Cf. McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221–23 (1957) (holding that a California court had jurisdiction over an out-of-state insurer when the insurer delivered the offer of life insurance and the insurance contract itself to California and the insured had sent his premium payments from California to the insurer for two years).

defendant's contacts with the forum state, not with the plaintiff, that count. Even if Zurich and Taian had contracts with Trek—as opposed to contracts with Giant and Formula—a contract with a forum resident is not enough, standing alone, to establish jurisdiction in that forum. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *see also Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). To conclude that personal jurisdiction exists, we need to see evidence that Zurich and Taian reached out to Wisconsin during the formation and execution of these contracts. *Burger King*, 471 U.S. at 479 ("It is these factors— prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."). There is no such evidence. In fact, the insurers never had any communication with *Trek* during the formation and execution of these contracts, much less any purposeful contact that touched the state of Wisconsin. A straightforward application of *Burger King* and *Walden* forecloses Lexington's argument.

Lexington's second contention—that personal jurisdiction exists because the policies contained worldwide coverage provisions—also fails. The thrust of the argument is that Zurich and Taian derived financial benefit from affirmatively including Wisconsin (and Texas, and the rest of the world) in their territory of coverage—because the more extensive the geographic coverage, the higher the premium. The fact that

the insurers generated income by including Wisconsin, Lexington says, means that the insurers did business in the state and can be sued there. And it argues that by agreeing to cover Trek for liabilities and defense costs incurred "worldwide," Zurich and Taian bargained for the expectation of being sued anywhere, including Wisconsin.[5]

As an initial matter, gaining a financial benefit by including Wisconsin in a territory of coverage is not the equivalent of "doing business in" Wisconsin. *See Goodyear*, 564 U.S. at 924; *Felland*, 682 F.3d at 673. If a parent bets her fifth grader fifty dollars that it will rain in every single state during the month of June, she hasn't "done business" in all fifty states even though her profit will increase or decrease based on what happens in each—and even though her risk and potential profit would have been less if she had limited the territory to twenty-five states. A defendant does business in a forum state when it "purposefully avail[s] itself of the privilege of *conducting activities within* the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (emphasis added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Neither Zurich nor Taian "conducted activities" within Wisconsin.

---

[5] To be clear, Lexington does not contend that the "worldwide coverage" clause constituted consent to be sued in any jurisdiction in the world. If that's what the clause provided, this would be an open-and-shut case. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997) ("[P]ersonal jurisdiction is waivable and [the] parties can, through forum selection clauses and the like, easily contract around any rule we promulgate.").

In fact, the Supreme Court has squarely rejected the proposition that such collateral financial benefits are purposeful contacts. *See World-Wide Volkswagen*, 444 U.S. at 298–99. In *World-Wide Volkswagen*, the plaintiffs purchased a vehicle in New York but later sustained personal injuries when they got into an accident while driving through Oklahoma. *Id.* at 288. They brought a products-liability action against the automobile retailer and wholesaler (both New York corporations that did no business in Oklahoma) in Oklahoma. *Id.* at 288, 295. The plaintiffs argued that because the automobile's "design and purpose" made it foreseeable that it would cause an injury in Oklahoma, *id.* at 295, and because the automobile companies received a financial benefit from selling a product with the ability to travel to across vast geographic areas (including the distance between New York and Oklahoma), they were subject to personal jurisdiction in Oklahoma, *id.* at 298. But the Supreme Court concluded that all of that added up to "no activity whatsoever in Oklahoma," *id.* at 295:

> [I]t is contended that jurisdiction can be supported by the fact that petitioners earn substantial revenue from goods used in Oklahoma…. This argument seems to make the point that the purchase of automobiles in New York, from which the petitioners earn substantial revenue, would not occur *but for* the fact that the automobiles are capable of use in distant States like Oklahoma…. [T]he very purpose of an automobile is to travel …. However, financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with the State.

*Id.* at 298–99. Just as the financial benefit gained by selling a product with the purpose and ability to travel to a vast number of distant forums is not itself business activity within those forums, so too here the financial benefit gained from broad geographic insurance coverage does not constitute "doing business" within the entire covered territory.

*World-Wide Volkswagen* also forecloses Lexington's argument that Zurich and Taian are subject to Wisconsin's jurisdiction because the "worldwide coverage" clause made it foreseeable that Trek might sue them anywhere in the world where Trek incurred liability. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295; *see also Burger King*, 471 U.S. at 474–75; *Hanson*, 357 U.S. at 251, 254; *Advanced Tactical*, 751 F.3d at 802. On the contrary, permitting jurisdiction "based on general notions of fairness and foreseeability [] is inconsistent with the premises of lawful judicial power." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality opinion). Only a defendant's actions can empower a state to exercise jurisdiction over him. *Id.*; *see also World-Wide Volkswagen*, 444 U.S. at 297 ("[T]he foreseeability that is critical to due process analysis … is that *the defendant's conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there." (emphasis added)). Given this principle, the "worldwide coverage" clause cannot justify Wisconsin's—or any other state's—exercise of jurisdiction over Zurich and Taian simply because the clause made suit in that state foreseeable. The clause can support jurisdiction only if the act of granting Trek "worldwide coverage" established a purposeful connection between the insurers and every American state, all of which are included in the covered territory. It did not.

The "worldwide coverage" clause defined the territorial scope of the insurers' obligation *to Trek*. But the presence of a state within the scope of coverage creates no purposeful connection between the insurers and *that state*. Consider Texas, which was the location of the accident, the suit, and the settlement. Zurich and Taian could have covered Trek's claim for this liability without ever touching Texas—for example, they could have mailed a check to Trek's headquarters in Wisconsin or sent the money electronically to an account located in another state or even another country. Indeed, if the covered territory had been limited, Zurich and Taian could have discharged their obligation by sending funds to an account located *outside* the covered territory. Jurisdiction depends on the defendant's actions, and payment of a covered claim is the only act that these policies required the insurers to perform. It is doubtful that the act of sending payment to an account located within a state is a contact sufficient to support personal jurisdiction. But even if it were, there is no necessary connection between the territory of coverage and the location of payment.

Lexington claims that "myriad cases around the country" have recognized personal jurisdiction under these same circumstances. Yet almost every case that it cites involves an insurance policy with a duty-to-defend clause—and if Zurich and Taian had assumed a duty to defend Trek in any jurisdiction in which it incurred liability and structured their financial benefits on that obligation, this might be a different case. In that situation, courts have described the "expectation of being haled into court in a foreign state [a]s an express feature of [the] policy." *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987); *see also Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990)

("[When] automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states … litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer."); *see also, e.g., Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790–91 (8th Cir. 2005); *Payne v. Motorists Mut. Ins. Cos.*, 4 F.3d 452, 454–57 (6th Cir. 1993). *But see Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1247 (9th Cir. 1984) ("Erie's failure to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care cannot, in our view, fairly be characterized as an act by which Erie has purposefully availed itself of the privilege of conducting activities in California."). Here, though, Zurich and Taian contracted for the *right*, not the *obligation*, to control litigation against their insureds. Thus, "the expectation of being haled into court in a foreign state" was *not* "an express feature" of either policy. *Rossman*, 832 F.2d at 286. Preserving the right to defend Trek—as opposed to assuming a duty to do so—gave Zurich and Taian the option of deciding whether to avail themselves of the benefits and protections of the forum's laws and courts. They promised to indemnify Trek no matter where it incurred liability, but as we have already said, paying Trek did not require them to make any purposeful contact with a state in which Trek was sued. The absence of a duty-to-defend clause is decisive.

Lexington has one case that is partly on its side: *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd*. In that case, the Tenth Circuit said that "the issuance of an insurance policy that contains a worldwide territory-of-coverage clause and an option to defend the insured is sufficient to establish minimum contacts with the forum state." 488 F.3d 1282, 1288 (10th Cir. 2007). Its "minimum contacts" analysis rests on the

very premises that Lexington invokes to support jurisdiction here: "the foreseeability of litigation in foreign states … based on the insurer's own actions" of including those states within the coverage area and the resulting financial benefits to the insurance company from offering broad geographic coverage. *Id.* at 1290.

*TH Agriculture* offers Lexington very little help, because despite what it said about minimum contacts, the Tenth Circuit concluded that the forum state *lacked* personal jurisdiction over the insurers in that case. The presence of minimum contacts does not justify personal jurisdiction when haling a defendant into court in the forum state would violate traditional notions of fair play and substantial justice. 488 F.3d at 1292 (citing *Burger King*, 471 U.S. at 477–78). This factor was dispositive in *TH Agriculture*. *Id.* ("[We] conclude that the exercise of personal jurisdiction over the Insurers in Kansas would be unreasonable."). Thus, *TH Agriculture* extends Lexington nothing more than an opportunity to win the battle and lose the war.

But in any event, we are unpersuaded by the Tenth Circuit's treatment of minimum contacts in *TH Agriculture*. Its discussion is not only inconsistent with Supreme Court precedent; it is also in significant tension with the Tenth Circuit's own precedent. In *OMI Holdings*, a duty-to-defend case decided almost a decade before *TH Agriculture*, the Tenth Circuit criticized the decisions of other circuits in duty-to-defend cases for relying heavily on "foreseeability—a position at odds with the Supreme Court's directive that foreseeability alone is an insufficient basis on which to establish minimum contacts." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1094 (10th Cir. 1998). It also expressed skepticism

at the willingness of other circuits to assume "that by agreeing to defend its insured in any forum, an insurer foresees being sued by its own insured in any forum when a coverage dispute arises." *Id.* at 1095. While it ultimately concluded that "contracting to defend the insured in the forum state" is a sufficient minimum contact with the forum, it stressed that this kind of contact is "qualitatively low on the due process scale." *Id.*[6] Notwithstanding these concerns, the Tenth Circuit inexplicably went even further in *TH Agriculture* by characterizing a territory-of-coverage clause as a sufficient contact with the forum state not only when an insurer assumes the duty to defend the insured, but also when it merely preserves the right to do so. 488 F.3d at 1291.

In the years since the Tenth Circuit decided *TH Agriculture*, the Supreme Court has continued to stress that the foreseeability of suit in a forum is not enough to justify a state's exercise of jurisdiction over a defendant. *See Walden*, 571 U.S. at 284–86; *Nicastro*, 564 U.S. at 882–83 (plurality opinion). Given these cases, the Tenth Circuit might come out differently if it were presented with the "minimum contacts" question today. Regardless, we must follow the Court's admonition that the predictability of a plaintiff's action is not itself enough to justify a state's exercise of jurisdiction over a defendant. *Walden*, 571 U.S. at 286. Zurich and Taian had a relationship with Trek, not Wisconsin. That relationship may have made it foreseeable that Trek would sue them in Trek's

---

[6] As in *TH Agriculture*, the court held that the forum state nonetheless lacked personal jurisdiction over the insurers because exercising it would violate traditional notions of fair play and substantial justice. *OMI Holdings, Inc.*, 149 F.3d at 1098.

home state or another forum it found convenient.[7] But "it is the defendant's actions, not his expectations, that empower a [foreign state] to subject him to judgment." *Nicastro*, 564 U.S. at 883 (plurality opinion). And Zurich and Taian did not make any purposeful contact with Wisconsin by promising to indemnify Trek for liability and defense costs that it incurred anywhere in the world.

---

[7] We note that Lexington would run into trouble even if we agreed that the "worldwide coverage" clause constituted a sufficient "minimum contact" with Wisconsin. To establish specific personal jurisdiction, Lexington's action must "*directly arise* out of the specific contacts between the defendant[s] and the forum state." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009) (citation omitted). In other words, "a defendant's contacts with the forum State [must] be directly related to the conduct pertaining to the claims asserted." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). Because Lexington's harm stems from the insurers' failure to reimburse it for defense and settlement costs in a *Texas* lawsuit about a *Texas* accident, it is not "directly related" to Zurich and Taian's alleged contacts with Wisconsin—unless Lexington's theory is that the "worldwide coverage" clause opens the possibility of a suit in Wisconsin for liability and defense costs that Trek incurs anywhere in the world. *Cf. TH Agric.*, 488 F.3d at 1291–92 ("[The plaintiff] is seeking coverage under the policy for judgments entered against it and costs incurred in litigating asbestos claims, at least one of which was filed in Kansas. Consequently, [the plaintiff]'s claims arise out of the Insurers' contact with Kansas."). And even if Lexington could successfully show that its suit directly relates to the insurers' contact with Wisconsin via the "worldwide coverage" clause, it would still have to show that Wisconsin's exercise of jurisdiction over the insurers would be reasonable. *See Asahi Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114-16 (1987). Lexington would have difficulty clearing that hurdle too. *Cf. TH Agriculture*, 488 F.3d at 1292–98.

* * *

Because Lexington failed to show that Zurich and Taian have sufficient minimum contacts with the state of Wisconsin, we agree with the district court that exercising jurisdiction over the insurance companies would violate due process. The district court's dismissal of the case for lack of personal jurisdiction is AFFIRMED.