NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-830                                      Appeals Court


FLETCHER FIXED INCOME ALPHA FUND, LTD., & another[1]  vs.  GRANT
THORNTON LLP & others.[2]


No. 15-P-830.

Suffolk.      January 6, 2016. - July 14, 2016.

Present:  Cypher, Grainger, & Meade, JJ.


Auditor.  Practice, Civil, Motion to dismiss.  Jurisdiction,
     Nonresident, Long-arm statute.  Due Process of Law,
     Jurisdiction over nonresident.  Negligence,
     Misrepresentation, Proximate cause.  Proximate Cause.


     Civil action commenced in the Superior Court Department on
January 17, 2014.

     Motions to dismiss were heard by Janet L. Sanders, J.


     Rachel S. Fleishman, of New York (Philip Y. Brown with her)
for the plaintiffs.
     Grant J. Esposito, of New York, for Grant Thornton LLP.
     William M. Connolly, of Pennsylvania, for EisnerAmper LLP &
another.
     Jonathan D. Cogan, of New York, for SS&C Technologies, Inc.


_____

     [1] Massachusetts Bay Transportation Authority Retirement
Fund.

     [2] EisnerAmper LLP, EisnerAmper (Cayman) Ltd., and SS&C
Technologies, Inc.

MEADE, J.  The plaintiffs, Fletcher Fixed Income Alpha Fund, Ltd. (Alpha), and Massachusetts Bay Transportation Authority Retirement Fund (MBTARF), Alpha's sole shareholder, appeal from the dismissal of their claims for accounting malpractice and negligent misrepresentation against certain entities that audited and administered Alpha, for failing to discover the fund manager's fraud.  The claims against the defendants, Grant Thornton LLP (Grant Thornton), and EisnerAmper LLP and EisnerAmper (Cayman) Ltd. (collectively, EisnerAmper), who served as auditors, were dismissed for lack of personal jurisdiction, a Superior Court judge ruling that the plaintiffs failed to show that their claims arose from the defendants' transaction of business in Massachusetts.  The claims brought by MBTARF against SS&C Technologies, Inc. (SS&C), a former Alpha administrator, were dismissed for failure to state a claim upon which relief can be granted, the judge reasoning that Alpha was insolvent by the time SS&C was hired, thereby negating the element of proximate cause.

Pending their appeal to this court, the plaintiffs settled with EisnerAmper.  As to the remaining defendants, the plaintiffs principally argue that in deciding the issue of specific jurisdiction, the judge should have taken into account a broader range of contacts between Grant Thornton and Massachusetts, and should have considered Grant Thornton's

knowledge that the audit reports would be sent to a Massachusetts entity.  MBTARF also maintains that the judge held it to an incorrect pleading standard in dismissing its claims against SS&C for failure to allege facts to support causation.  We affirm.

1.  <u>Background</u>.  We summarize the undisputed facts from the judge's February 23, 2015, "Memorandum of Decision and Order on the Defendants' Motions to Dismiss Plaintiffs' Amended Complaint."  MBTARF is a pension fund for public employees and retirees of Massachusetts Bay Transportation Authority.  In June, 2007, MBTARF invested in Alpha.  Alpha, along with FIA Leveraged Fund, Ltd. (Leveraged), and Fletcher Income Arbitrage Fund, Ltd. (Arbitrage) (collectively, the Fletcher funds), were operated in the Cayman Islands as feeder funds for Fletcher International, Ltd. (FILB), the master fund.  The Fletcher funds were managed by one Alphonse Fletcher, through Fletcher Asset Management (FAM), based in New York.  MBTARF invested $25 million in Alpha, all of which it lost the following year when Alpha became insolvent.

In December, 2007, FAM hired Grant Thornton to provide auditing services for a number of Fletcher funds, including Alpha.  Grant Thornton performed the work, and Grant Thornton Cayman Islands, an entity organized under the laws of the Cayman Islands, issued the audit reports.  Grant Thornton Cayman

Islands issued audit reports for 2007 and 2008, addressed to the board of directors and the shareholders of the audited funds. In March, 2010, Grant Thornton notified FAM that it was withdrawing its audit opinions for Arbitrage and Leveraged for 2007 and 2008, after the Securities and Exchange Commission challenged the accounting treatment of two $80 million "cashless notes" exchanged between the Fletcher funds. Grant Thornton instructed FAM to notify persons likely to rely on the withdrawn audit reports. Neither FAM nor Grant Thornton notified MBTARF, which had invested only in Alpha, that the reports for Arbitrage and Leveraged had been withdrawn. FAM then replaced Grant Thornton with EisnerAmper.

SS&C was hired by FAM as Alpha's administrator in April, 2010. MBTARF previously had been informed by FAM in 2007 that the calculation of Alpha's value would be made in consultation with the fund administrator at the time. But MBTARF was not informed that when SS&C took over that role from its predecessor, SS&C would not participate in valuations. MBTARF claims that had it been so informed, it immediately would have redeemed its investment.

The amended complaint alleges that Alphonse Fletcher committed fraud by inflating the value of the Fletcher funds. The plaintiffs claim that Grant Thornton is liable for improperly auditing the Fletcher funds, and that SS&C, as fund

administrator, misrepresented the nature of its services and the value of MBTARF's investment.

2. Personal jurisdiction under G. L. c. 223A, § 3(a). For a court to exercise personal jurisdiction over a nonresident, "there must be a statute authorizing jurisdiction and the exercise of jurisdiction must be consistent with basic due process requirements mandated by the United States Constitution." Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010) (citation omitted). If the long-arm statute does not provide a basis to confer personal jurisdiction over the defendant, we need not consider the constitutional question of due process. Roberts v. Legendary Marine Sales, 447 Mass. 860, 865 (2006). The plaintiff has the burden of production as to jurisdictional facts once jurisdiction is challenged. See Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, supra at 219. See also Cepeda v. Kass, 62 Mass. App. Ct. 732, 739-740 (2004) (describing burden of proof by preponderance of evidence applicable to motion pursuant to Mass.R.Civ.P. 12[b][2], 365 Mass. 754 [1974]).

The plaintiffs direct their arguments to specific, rather than general, jurisdiction. General jurisdiction requires that a foreign corporation have affiliations with the forum State that are so "continuous and systematic" as to render the

defendant essentially at home there. <u>Daimler</u> v. <u>Bauman</u>, 134 S. Ct. 746, 754 (2014) (citation omitted). The factual allegations in the amended complaint make clear that Grant Thornton did not have continuous or systematic contact with Massachusetts to warrant the exercise of general jurisdiction.

Specific jurisdiction, by contrast, "depends on an affiliation between the forum and the underlying controversy." <u>Walden</u> v. <u>Fiore</u>, 134 S. Ct. 1115, 1121 n.6 (2014) (citation omitted). The plaintiffs contend that specific jurisdiction over Grant Thornton is proper under the Massachusetts long-arm statute, G. L. c. 223A, § 3, as amended by St. 1969, c. 623. The statute provides, in relevant part:

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> "(a) transacting any business in this commonwealth;
>
> "(b) contracting to supply services or things in this commonwealth;
>
> "(c) causing tortious injury by an act or omission in this commonwealth;
>
> "(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."

The plaintiffs rely on G. L. c. 223A, § 3(<u>a</u>) and (<u>d</u>). As to § 3(<u>a</u>), the judge ruled that the evidence failed to show that

the plaintiffs' claims arose from Grant Thornton's transaction of business in Massachusetts. The judge observed that the audited funds were operated in the Cayman Islands and that the work involved in the Alpha audit was performed outside of Massachusetts. The judge further observed that Grant Thornton's few contacts with Massachusetts bore little or no connection to its audits of Alpha, and most took place after the audit activities outlined in the amended complaint transpired.

On appeal, the plaintiffs argue that in analyzing G. L. c. 223A, § 3(a), the judge should have considered the totality of Grant Thornton's contacts with Massachusetts, rather than only those connected to the audits. For this, the plaintiffs rely on an overly-broad reading of Tatro v. Manor Care, Inc., 416 Mass. 763 (1994). However, the tort claim in Tatro arose in the context of a contractual relationship between the parties. The issue was whether a single telephone call between the plaintiff in Massachusetts and the defendant hotel owner in California, in which the plaintiff reserved a hotel room, was sufficient contact with Massachusetts to satisfy § 3(a), when the plaintiff was subsequently injured on the defendant's premises during her stay. The Supreme Judicial Court held that "[p]articularly where a contract between the parties is associated with other forum-related activities, a defendant's relatively minor contacts with a Massachusetts plaintiff have

been held sufficient to satisfy the transacting business requirement set out in § 3(a)." Id. at 768.

The court in Tatro v. Manor Care, Inc., supra, did not include in its analysis the defendant's general contacts with Massachusetts, but rather considered only those contacts that were directed at soliciting the same kind of contractual relationship, targeting Massachusetts business people who might schedule conferences at a California hotel, that the defendant ultimately procured with the plaintiff. Citing Hahn v. Vermont Law Sch., 698 F.2d 48, 50-52 (1st. Cir. 1983), the court observed that "[t]he defendant's contact with the plaintiff was part of a larger systematic effort on its part to obtain business from Massachusetts businesses and residents." Tatro v. Manor Care, Inc., supra at 769. The cases do not hold that unrelated contacts with the forum are relevant for specific jurisdiction under G. L. c. 223A, § 3(a), as the plaintiffs insist. That argument ignores the court's directive in Tatro that other forum-related activities must be associated with the challenged transaction between the parties in order to be relevant to the analysis. Ibid. We understand "associated" to mean something more than mere coexistence.

Moreover, such an expansive reading of Tatro would run afoul of due process, which provides that in order for a State to exercise specific jurisdiction, it is the defendant's suit-

related contacts that must create a substantial connection with the forum State. See Walden v. Fiore, supra at 1121. In United Elec., Radio & Mach. Wkrs. of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992), the United States Court of Appeals for the First Circuit explained that the Massachusetts "long-arm statute also demands that plaintiffs' cause of action arise from the defendant's transaction of business in the commonwealth," and "[t]he statute's relatedness requirement mirrors a key constitutional requirement for the exercise of specific jurisdiction." See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 63 (1st Cir. 2002) (constitutional limit on specific jurisdiction under G. L. c. 223A, § 3[a], "requires a nexus between the claim and the defendant's in-state activities").

Turning to the case against Grant Thornton, the plaintiffs point to evidence that the company registered to do business in Massachusetts in 1996. The evidence also indicates that in June, 2013, Grant Thornton had more than 175 employees in its Boston office. However, those contacts were not shown to be related to the Alpha audits performed by Grant Thornton for 2007 and 2008, nor do they support the contention that the Alpha audits, which were performed outside of Massachusetts pursuant to a contract with a Cayman Islands entity, were part of a larger systematic effort to obtain business in Massachusetts.

The plaintiffs also claim that the judge failed to apply the but/for analysis, as set out in Tatro v. Manor Care, Inc., supra at 771, in determining whether their claims arose from Grant Thornton's Massachusetts contacts. In particular, they rely on an offering memorandum between FAM and MBTARF, which indicated that Grant Thornton had been hired as Alpha's independent auditors and that Alpha would send the audit report to the shareholders. According to the plaintiffs, the offering memorandum shows that Grant Thornton knew that MBTARF would receive and rely on the reports in Massachusetts. In the plaintiffs' view, Grant Thornton's knowledge that FAM would send the Alpha audit reports to its Massachusetts shareholders constituted a Massachusetts contact that was causally linked to the plaintiffs' injury when MBTARF relied on them. However, as the judge properly determined, Grant Thornton's knowledge that FAM would send the audit reports to Massachusetts does not constitute a contact with Massachusetts sufficient to support jurisdiction. See Walden v. Fiore, 134 S. Ct. at 1124-1125 (defendant's knowledge that affidavit he drafted in Georgia would affect plaintiffs in Nevada was not proper basis for specific jurisdiction in Nevada). As explained in Walden v. Fiore, supra at 1125, a defendant's actions outside the forum, in that case the State of Nevada, did not create sufficient

contacts with the forum "simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."

This court applied similar reasoning in Morris v. UNUM Life Ins. Co., 66 Mass. App. Ct. 716, 721-722 (2006), where telephone calls and letters sent from two Maine physicians to a Massachusetts physician, concerning an insured's ineligibility for disability coverage, were deemed insufficient in-forum contacts to confer jurisdiction in Massachusetts for the insured's claims of misrepresentation against the out-of-State physicians. That the information provided by the Maine defendants was communicated to and utilized in Massachusetts to deny coverage to the plaintiff did not supply the requisite contacts for specific jurisdiction under G. L. c. 223A, § 3(a) or (d). Id. at 722.

3. Personal jurisdiction under c. 223A, § 3(d). As a threshold matter, the parties debate whether c. 223A, § 3(d), may be relied upon to establish specific jurisdiction. Grant Thornton maintains that § 3(d) can support only general jurisdiction and that, since the plaintiffs have waived general jurisdiction, they have no claim under that section of the long-arm statute. See, e.g., Connecticut Natl. Bank v. Hoover Treated Wood Prod., Inc., 37 Mass. App. Ct. 231, 233 n.6 (1994) (§ 3(d) "is predicated on general jurisdiction," i.e., defendant having engaged in continuous and systematic activity in the

forum, unrelated to the suit); Fern v. Immergut, 55 Mass. App. Ct. 577, 581 n.9 (2002) (referring to claim under § 3[d] as one for general jurisdiction). In any event, while the cases tend to support Grant Thornton's view, the judge properly ruled that the plaintiffs failed to satisfy their burden of showing that specific jurisdiction may be exercised over Grant Thornton under § 3(d).

Section 3(d) of G. L. c. 223A requires a showing of tortious injury in Massachusetts caused by an out-of-State act or omission, and proof that the defendant regularly does or solicits business in Massachusetts or otherwise engages in a persistent course of conduct or derives substantial revenue from Massachusetts. Even assuming that the injury to MBTARF and Alpha occurred in Massachusetts, the record, as delineated above in our discussion of G. L. c. 223A, § 3(a), fails to establish the latter requirement. Also, as the judge observed, due process considerations would not permit the exercise of specific jurisdiction over Grant Thornton on these facts, given the scant evidence of Grant Thornton's activities in relation to Massachusetts at the time of the alleged wrongdoing.[3]

---

[3] The plaintiffs maintain that Grant Thornton derived substantial revenues from Massachusetts in 2013 and 2014, but the judge emphasized that the plaintiffs provided no evidence to support the claim, even if relevant.

We reject the plaintiffs' contention that Grant Thornton's more recent Massachusetts contacts should be considered in the G. L. c. 223A, § 3(d), analysis.  In establishing specific jurisdiction, particularly in the absence of a contractual or other continuing relationship with a Massachusetts plaintiff, our focus is directed to the defendant's contacts at the time the cause of action arose, rather than when the complaint was filed.  See Cambridge Literary Properties Ltd. v. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d at 66.  The factual allegations do not establish that Grant Thornton's work relative to the plaintiffs' claims was ongoing at the time of the complaint so as to render its contacts with Massachusetts in 2013 and 2014 relevant under § 3(d).[4]

As a final matter, contrary to the plaintiffs' assertion, this case bears no resemblance to Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), which involved a long-term franchise contract between the parties and, as a result, a

---

[4] The Federal cases cited by the plaintiffs from other jurisdictions involved manufacturers marketing their defective products to the forum State and are factually and procedurally distinct.  See, e.g., Clune v. Alimak AB, 233 F.3d 538, 544 n.8 (8th Cir. 2000) (relevant contacts were manufacturer's presence in forum while crane was present there, not only when crane accident occurred); Logan Prod., Inc. v. Optibase, Inc., 103 F.3d 49, 52-53 (7th Cir. 1996) (constitutional analysis of purposeful availment, defendant manufacturer having conceded specific jurisdiction under State long-arm statute for claim brought by a distributor).  The plaintiffs also cite Grupo Dataflux v. Atlas Global Group L.P., 541 U.S. 567 (2004), but that case addressed subject matter jurisdiction.

continuing obligation on the part of the Michigan defendant to maintain a substantial connection with Burger King Corporation in the forum State of Florida.  The defendant there knowingly "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida."  Id. at 480.  Here, significantly, there was no contractual relationship between Grant Thornton and a Massachusetts plaintiff, nor was there a continuous obligation or other course of contact directed at Massachusetts by Grant Thornton.  As noted above, knowledge that FAM would send the audit reports to Massachusetts was not sufficient contact between Grant Thornton and the forum to establish jurisdiction for purposes of either G. L. c. 223A, § 3(a) or (d).

4.  Claims against SS&C.  MBTARF brought claims against SS&C for negligent misrepresentation, aiding and abetting fraud, and violation of G. L. c. 93A, § 11.  The amended complaint alleges that MBTARF would have redeemed its investment in Alpha when SS&C took over as administrator in 2010 had MBTARF known that SS&C had disavowed its duty to take part in Alpha's asset valuation.  Yet according to the amended complaint, Alpha was "hopelessly insolvent" by the end of 2008, or "likely earlier."

On appeal, MBTARF argues that the judge applied the wrong standard, at this stage of the litigation, because MBTARF was not required to demonstrate that its allegation that SS&C was

the proximate cause of its loss was true or to produce evidence to that effect. However, as SS&C argues, dismissal under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), is appropriate "where the allegations in the complaint clearly demonstrate that the plaintiff's claim is legally insufficient." Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 748 (2006). Causation is a necessary element of the plaintiff's claims against SS&C. "Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." Davis v. Westwood Group, 420 Mass. 739, 742-743 (1995). Also contrary to MBTARF's assertion, lack of proximate cause is appropriate for determination under rule 12(b)(6), where the complaint itself demonstrates that causation, as alleged, was not proximate. See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 44-45 (2009). Given the allegations indicating that Alpha was insolvent when SS&C took over as fund administrator, the judge properly relied on lack of proximate cause as a basis for dismissal.

MBTARF suggests that it did not have to allege that SS&C was the sole cause of the loss, but only that SS&C's conduct was a substantial factor in the loss, citing Lawrence Sav. Bank v. Levenson, 59 Mass. App. Ct. 699, 707 (2003). The distinction does not help MBTARF's position on the facts alleged, as MBTARF

must still show a causal connection between SS&C's role at Alpha and MBTARF's failure to redeem prior to Alpha's insolvency. Given the timeline alleged in the amended complaint, MBTARF has not shown that SS&C was a substantial factor in MBTARF's loss.

MBTARF further posits that despite Alpha's insolvency by the time SS&C was hired, there might have been some assets at that time that could have been used to satisfy MBTARF's redemption request. Facts to support that position were not identified in the amended complaint. "The plaintiff's claim must be based on facts set forth in the complaint; all materials outside the pleadings are excluded in this review." General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992). We agree with SS&C that the argument is speculative and does not warrant reversal.

Judgment affirmed.