NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-734                                        Appeals Court

        D.F. PRAY, INC. <u>vs</u>. WESCO INSURANCE COMPANY.

                        No. 22-P-734.

        Suffolk.    May 9, 2023. – September 14, 2023.

            Present:  Sacks, Shin, & D'Angelo, JJ.


<u>Jurisdiction</u>, Personal, Nonresident, Long-arm statute.  <u>Due
     Process of Law</u>, Jurisdiction over nonresident.  <u>Insurance</u>,
     Coverage.  <u>Practice, Civil</u>, Waiver, Summary judgment.



     <u>C</u><u>ivil action</u> commenced in the Superior Court Department on
August 9, 2016.

     The case was heard by <u>Catherine H. Ham</u>, J., on a motion for
summary judgment.


     <u>Richard E. Briansky</u> for the plaintiff.
     <u>Max W. Gershweir</u>, of New York (<u>William A. Schneider</u> also
present) for the defendant.


     SACKS, J.  The dispositive question presented in this

insurance coverage dispute is whether the Superior Court erred

in ruling that it had personal jurisdiction over the defendant,

Wesco Insurance Company (Wesco), a Delaware corporation with a

principal administrative office in New York.  The plaintiff

construction company, D.F. Pray, Inc. (Pray), a Rhode Island corporation with a principal place of business in Massachusetts, was an additional insured on a commercial general liability policy that Wesco issued to one of Pray's subcontractors, a New York corporation, covering (among other things) the subcontractor's work on Pray's project in New York.  Pray asked Wesco to indemnify it for certain costs related to correcting the subcontractor's faulty work on the project, but Wesco refused.  Pray then brought this action, and Wesco moved to dismiss the complaint for lack of personal jurisdiction.  A judge (first motion judge) denied that motion, but a second motion judge later allowed Wesco's motion for summary judgment on the merits of the coverage dispute.  Pray now appeals from that judgment.

On appeal, Wesco renews its personal jurisdiction defense and asks us to rule on that basis.  We first conclude that, contrary to Pray's argument, Wesco did not forfeit the defense by later seeking summary judgment on the merits.  We also conclude that the first motion judge erred in rejecting the defense.  We therefore vacate the judgment and remand for the

entry of a new judgment dismissing the complaint, not on the merits but instead for lack of personal jurisdiction over Wesco.[1]

Background.  The material facts are undisputed for purposes of this appeal.  In January of 2014, Pray, as general contractor on an office renovation project in New York, subcontracted the drywall work to Xtreme Drywall & Acoustics, Inc. (Xtreme), a New York corporation.  The subcontract required Xtreme to indemnify Pray for any losses caused by Xtreme's negligence (among other things), and it included an insurance rider requiring Xtreme to maintain a commercial general liability policy on which Pray would be an additional insured.

In August of 2014, Xtreme applied to Wesco for one year of commercial general liability coverage, to take effect on August 22, 2014, the date that Xtreme stated its coverage with another carrier would expire.  The application further stated that Xtreme did all of its business in New York.  The application sought various "blanket additional insured" coverages, without referring specifically to Pray or any other person or entity.

---

[1] "A judgment is void if the court from which it issues lacked personal jurisdiction over the defendant."  Lamarche v. Lussier, 65 Mass. App. Ct. 887, 889 (2006).  "We address the question of personal jurisdiction first because other issues are obviously moot if the court is without power to adjudicate at all."  Akinci-Unal v. Unal, 64 Mass. App. Ct. 212, 215 (2005), cert. denied, 547 U.S. 1206 (2006).

The application was not limited to any particular project in which Xtreme was or might become engaged.

Wesco issued the policy, which included three "additional insured" form endorsements. None of those endorsements expressly named Pray as an additional insured or limited the coverage to any particular project. Rather, two of the endorsements, in the space provided for the names of additional insureds, stated, "[b]lanket as required by written contract."[2] The third endorsement amended the policy definition of the term "[w]ho [i]s [a]n [i]nsured" to include "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."[3]

By September of 2014, Pray had encountered problems with Xtreme's work.[4] In February of 2016, Pray learned that Xtreme,

---

[2] These were the endorsements for "Additional Insured -- Owners, Lessees or Contractors -- Scheduled Person or Organization" and "Additional Insured -- Owners, Lessees or Contractors -- Completed Operations."

[3] This was the endorsement for "Additional Insured -- Owners, Lessees or Contractors -- Automatic Status When Required in Construction Agreement with You -- Primary Insurance."

[4] Specifically, Xtreme failed to supply sufficient personnel to timely complete its work. Pray exercised its right to complete the work and, in March of 2015, commenced an action against Xtreme in Superior Court in the Commonwealth. Xtreme

in working on the project's twelve-story mechanical shaft, had failed to include the three layers of drywall that Pray has maintained were both contractually required and necessary to the shaft wall's fire rating.  To gain access to and repair the work, Pray needed to demolish other portions of the building adjacent to the shaft wall, including bathrooms, janitorial closets, and kitchenettes.  Pray thus notified Wesco that Pray was making a claim for indemnification under the policy for what it asserted was "property damage" caused by Xtreme's negligence.  Wesco, while not disputing that Pray was an additional insured, denied the claim, asserting (among other things) that Pray sought indemnification merely for an economic loss, not for "property damage" caused by an "occurrence," as the policy defined those terms.

Pray then brought this action, asserting claims for breach of the insurance contract, declaratory relief, and unfair settlement practices in violation of G. L. c. 93A.[5]  Wesco moved

_____

defaulted, Pray moved for an assessment of damages, Wesco intervened, and the case was stayed at Wesco's request pending the outcome of this case.  Xtreme was named as a party in interest in this case but has not appeared.

[5] Pray's claims were premised on Wesco's asserted direct liability to Pray as an additional insured, as well as on Wesco's responsibility as Xtreme's insurer to pay amounts for which Xtreme was or might be found to be liable to Pray.  On appeal, Pray appears to rely only on its status as an additional insured.

to dismiss the complaint for lack of personal jurisdiction, among other grounds. See Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974). After limited discovery directed to the jurisdictional issue, Pray established as undisputed fact that, as of 2016, for at least the preceding twelve years, Wesco had been transacting business in the Commonwealth by providing workers' compensation and general liability coverage to commercial entities. Also as of 2016, Wesco had more than one hundred licensed agents in Massachusetts and, in 2015, generated approximately $30 million in direct insurance premiums in the Commonwealth.[6] Wesco's motion to dismiss was denied.

Wesco then filed an answer asserting lack of personal jurisdiction as a defense. Wesco also asserted counterclaims seeking declarations, based on various provisions of the policy, that it had no duty to indemnify Pray for the damages sought in the complaint. Wesco moved for summary judgment on Pray's claims, asserting that Xtreme's faulty work did not qualify under the policy as "property damage" caused by an "occurrence," and that the policy included multiple "[b]usiness [r]isk" exclusions that precluded coverage for faulty work. The second

---

[6] In addition, although the record does not reflect the basis for doing so, the parties have treated as undisputed fact that Wesco previously brought at least one declaratory judgment action in Federal court in Massachusetts. The record is silent about the nature of that action.

motion judge allowed that motion, but on a ground not asserted by Wesco:  that once Pray began to encounter problems with Xtreme's work, Pray could foresee that Xtreme's further work would be defective, meaning that the defective work was not an "accident," and thus not an occurrence.  Judgment entered dismissing the case, and Pray appealed.

Discussion.  1.  Forfeiture of personal jurisdiction defense.  We first dispose of Pray's argument that Wesco forfeited its objection to personal jurisdiction by (a) filing an answer that included counterclaims as well as the jurisdictional defense and then (b) moving for summary judgment on the merits, without simultaneously reasserting the jurisdictional defense.  An objection to personal jurisdiction "may be waived by conduct, express submission, or extended inaction."  Lamarche v. Lussier, 65 Mass. App. Ct. 887, 889 (2006).  Merely raising a defense of lack of personal jurisdiction in an answer or other responsive pleading "may not alone suffice to preserve that defense."  American Int'l Ins. Co. v. Robert Seuffer GmbH & Co. KG, 468 Mass. 109, 119, cert. denied, 574 U.S. 1061 (2014).  "If a party alleges a lack of personal jurisdiction in an answer and then fails timely to

pursue the defense, a forfeiture of that defense may result."[7] Id. Critically, however, a party who "raise[s] such a defense in a responsive pleading may ensure its preservation by moving to dismiss pursuant to rule 12 (b) (2) within a reasonable time, prior to substantially participating in discovery and litigating the merits of the case" (quotation and citation omitted). Id.

Here, Wesco did even more; it moved to dismiss pursuant to rule 12 (b) (2) before filing its answer, let alone taking any steps to litigate the merits. It follows that, once that motion was denied, Wesco did not forfeit the defense by filing its counterclaims or by seeking summary judgment on the merits. As the Supreme Judicial Court has said in the related context of quasi-in-rem jurisdiction, "a defendant who has unsuccessfully challenged the court's jurisdiction over him may proceed to the merits without waiving his right to appellate review of the question of jurisdiction." Morrill v. Tong, 390 Mass. 120, 125 (1983). See Lamarche, 65 Mass. App. Ct. at 890, citing Walling v. Beers, 120 Mass. 548, 550 (1876). See also Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 23 (1st Cir. 2005). Wesco

---

[7] The court explained that a personal jurisdiction defense may be "waived" by failure to assert it, but where the defense is initially raised, and then lost through action or inaction, "the term 'forfeiture' is more appropriate" (citation omitted). American Int'l Ins. Co., 468 Mass. at 110 n.2.

did just that, and so its jurisdictional defense is properly before us.

2. _Personal jurisdiction_. Wesco is not a "resident" of the Commonwealth,[8] nor does Pray argue that Wesco's "in-state contacts were sufficiently 'continuous and systematic' to justify the exercise of general jurisdiction over claims unrelated to those contacts." _Goodyear Dunlop Tires Operations, S.A._ v. _Brown_, 564 U.S. 915, 925 (2011). See _Exxon Mobil Corp._ v. _Attorney Gen._, 479 Mass. 312, 314 (2018), cert. denied, 139 S. Ct. 794 (2019); _von Schönau-Riedweg_ v. _Rothschild Bank AG_, 95 Mass. App. Ct. 471, 482 (2019) (no claim that bank's "activities in Massachusetts reach the volume required for an assertion of general jurisdiction"). Therefore, "our inquiry in this case concerns the exercise of specific jurisdiction," which "requires an affiliatio[n] between the forum and the underlying controversy" (quotation and citation omitted). _Exxon Mobil Corp._, _supra_ at 315.

"For a nonresident to be subject to the authority of a Massachusetts court, the exercise of jurisdiction must satisfy both Massachusetts's long-arm statute, G. L. c. 223A, § 3, and

_____

[8] "A business is a 'resident,' and therefore subject to the forum's general jurisdiction, if the business is domiciled or incorporated or has its principal place of business in the forum State." _Exxon Mobil Corp._ v. _Attorney Gen._, 479 Mass. 312, 314 (2018), cert. denied, 139 S. Ct. 794 (2019).

the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution." Exxon Mobil Corp., 479 Mass. at 314.  "Because the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question."  SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).  "We review the question of personal jurisdiction de novo."  Sullivan v. Smith, 90 Mass. App. Ct. 743, 746-747 (2016).  See Doucet v. FCA US LLC, 492 Mass. 204, 207 (2023).

a.  Long-arm analysis.  The long-arm statute provides in pertinent part as follows:  "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting."  G. L. c. 223A, § 3.  The first motion judge ruled that this clause "is applicable on its face."  We agree.

More specifically, we agree that Wesco "contract[ed] to insure [a] person . . . located within this commonwealth" -- i.e., Pray, which has its principal place of business here -- and that Pray's causes of action "aris[e] from" that contract of

insurance.[9]  G. L. c. 223A, § 3.  We recognize, of course, that Wesco did not contract directly with Pray.  Instead, Wesco contracted with Xtreme, a New York corporation, to insure Xtreme and whatever entities might fall within the terms of any of the "additional insured" form endorsements on the policy Wesco wrote to Xtreme.  But neither the language of clause (f), nor any case cited by the parties, requires that an insurer have contracted directly with a person in the Commonwealth in order for that clause to apply.  Relatedly, although Wesco argues that clause (f) cannot apply because it did not "specifically" contract to insure Pray, Wesco cites nothing in the statute, and no other authority, to support such a limitation.  The court has repeatedly said that we are to examine whether "the literal requirements of the statute are satisfied"; if so, we proceed to the due process analysis.  Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).  See Exxon Mobil Corp., 479 Mass. at 318 n.4;

---

[9] In the context of the long-arm statute's clause (b) ("contracting to supply services or things in this commonwealth"), the court has "construe[d] the phrase 'in this commonwealth' as referring to the place where the services or things are to be supplied, rather than referring to the place of the contracting."  Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 157 (1978).  Wesco does not argue that any different approach should apply under clause (f) or that Pray was not located in the Commonwealth at the time Wesco contracted to insure Xtreme (and thus, indirectly, Pray).

Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6-7, 8 n.13 (1979). The literal requirements are satisfied here.[10]

Having concluded that clause (f) applies based on Wesco's having contracted to insure a person located in the Commonwealth, we need not determine whether, as the judge concluded, it also applies on the ground that Wesco contracted to insure a "risk" located here, G. L. c. 223A, § 3 (f), or whether Wesco "contract[ed] to supply services or things in this commonwealth," i.e., defense and indemnification, G. L. c. 223A, § 3 (b). "Since a finding of personal jurisdiction under any one of the subsections of § 3 is sufficient to [support long-arm jurisdiction], we need not consider whether jurisdiction might also be conferred by virtue of [other subsections]." Good Hope Indus., Inc., 378 Mass. at 2 n.3. See Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 215 (2010) (personal jurisdiction is statutorily "authorized when one of the provisions of our long-arm statute . . . is satisfied").

b. Due process analysis. "The due process analysis entails three requirements. First, minimum contacts must arise

_____

[10] Had Wesco wished to limit how clause (f) applied to it, Wesco could have written its endorsements more narrowly, e.g., to exclude persons or entities not specifically listed as additional insureds or to exclude persons or entities then located in the Commonwealth.

from some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Second, the claim must arise out of or relate to the defendant's contacts with the forum.  Third, 'the assertion of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."'"  (Citations omitted.)  Bulldog Investors Gen. Partnership, 457 Mass. at 217, quoting Tatro, 416 Mass. at 772-773.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 474-478 (1985); Doucet, 492 Mass. at 210-211, 213, 217.

Addressing these three requirements in turn, we conclude that, although Wesco has certain minimum contacts with Massachusetts, Pray's claims do not sufficiently relate to those contacts to satisfy the due process standards for personal jurisdiction.  We therefore need not decide whether the exercise of jurisdiction would also be consistent with traditional notions of fair play and substantial justice.

i.  Purposeful availment.  There is no doubt that Wesco, by selling insurance policies in Massachusetts, has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" so as to give rise to minimum contacts (citation omitted).  Bulldog Investors Gen. Partnership, 457 Mass. at 217.  As noted supra, as of 2016, for at least the

preceding twelve years, Wesco had been transacting business here by providing insurance coverage to commercial entities. Also as of 2016, Wesco had more than one hundred licensed agents here, and in 2015, it generated approximately $30 million in direct insurance premiums here.

ii. Relationship of contacts to claims. The difficulty for Pray is that its claims do not "arise out of or relate to [Wesco's] contacts with the forum." Bulldog Investors Gen. Partnership, 457 Mass. at 217. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State" (emphasis added). Walden v. Fiore, 571 U.S. 277, 284 (2014). See Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco County, 582 U.S. 255, 264 (2017) (rejecting "sliding scale approach" under which "strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims"); Goodyear Dunlop Tires Operations, S.A.,, 564 U.S. at 930 n.6 ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"); Exxon Mobil Corp., 479 Mass. at 321 n.8.

We recognize that Wesco is generally in the business of selling insurance policies in Massachusetts and elsewhere and

that Wesco has done substantial business here.  Nevertheless, the particular policy that Wesco sold to Xtreme, by which Wesco contracted to insure Pray and which gave rise to Pray's claims, was not sold in Massachusetts, not sold to a Massachusetts resident, not related to a Massachusetts project, and not otherwise related to Wesco's contacts with the Commonwealth.[11] The burden is on Pray to establish the facts showing personal jurisdiction, see Exxon Mobil Corp., 479 Mass. at 314, and Pray has not shown that the insurance contract under which it claims coverage has any connection whatsoever to the Commonwealth.[12]

---

[11] Looking more closely at the particulars of this transaction does not assist Pray.  Wesco is a Delaware corporation with a principal administrative office in New York. It sold a policy to Xtreme, a New York corporation that assertedly does business only in New York.  Xtreme's application for the policy was prepared by a separate entity located in New York and submitted by an insurance agent, also located in New York, to an entity located in Pennsylvania that managed the Wesco insurance program under which Xtreme sought coverage.  So far as the record reflects, after coverage was bound, the Pennsylvania entity sent the policy electronically to the New York agent, which would then have been responsible for delivering the policy to Xtreme or its agent.

[12] Pray makes no argument that Wesco's activities in Massachusetts had any relationship to the decision to purchase the Wesco policy at issue, which in any event was a decision made by Xtreme rather than Pray.  Contrast Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1023, 1028-1029 (2021) (manufacturer's efforts to foster and serve vehicle markets in forum States supported exercise of personal jurisdiction by those States, notwithstanding that particular vehicles at issue were first sold elsewhere and arrived in forum States only through later resales and relocations by consumers; ultimate owners might never have bought vehicles, and thus suits

To be sure, Wesco contracted with Xtreme to cover additional insureds such as Pray, and Pray in turn has a principal place of business in the Commonwealth.  But that does not create a sufficient relationship between Wesco and the Commonwealth, for two reasons.

First, the defendant's relationship with the forum State must "proximately result from actions by the defendant <u>himself</u> that create a 'substantial connection' with the forum State." <u>Burger King Corp</u>., 471 U.S. at 475, quoting <u>McGee</u> v. <u>International Life Ins. Co</u>., 355 U.S. 220, 223 (1957).  "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." <u>Helicopteros Nacionales de Colombia, S.A.</u> v. <u>Hall</u>, 466 U.S. 408, 417 (1984).  Pray offered no evidence that Wesco, when contracting with Xtreme, knew of Xtreme's contract with Massachusetts-based Pray.  Xtreme's act of entering the contract with Pray does not constitute a contact that Wesco created with Massachusetts.[13]  "The contacts must be

---

might never have arisen, but for manufacturer's contacts with their home States).

[13] Relatedly, "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant -- not the convenience of plaintiffs or third parties." <u>Walden</u>, 571 U.S. at 284.  Accordingly, the

the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1025 (2021), quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

Second, "[w]hat is needed -- and what is missing here -- is a connection between the forum and the specific claims at issue," Bristol-Myers Squibb Co., 582 U.S. at 265; the connection must result from "the defendant's suit-related conduct" (emphasis added), Walden, 571 U.S. at 284.[14] See Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP, 89 Mass. App. Ct. 718, 722-723 (2016) (same). Wesco's suit-related conduct -- its sale of a policy to Xtreme under which Pray

---

Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. Although doubtless it would be more convenient for the plaintiff, Pray, to litigate here, we must focus on the defendant, Wesco, and Wesco's "suit-related conduct." Id. That conduct occurred in New York, and perhaps in Pennsylvania, not in Massachusetts.

[14] In Bristol-Myers Squibb Co., although the California courts had jurisdiction of claims with substantial connections to California, jurisdiction was held lacking with respect to claims by other plaintiffs that were factually and legally similar except that the relevant conduct and injuries occurred in other States. Bristol-Myers Squibb Co., 582 U.S. at 264-265. Here, that our courts would have jurisdiction of insureds' suits against Wesco on policies with substantial connections to the Commonwealth does not mean our courts necessarily have jurisdiction of similar suits on policies that have little or no such connection.

became an additional insured -- was an indirect contact with Pray, attributable not to Wesco's "purposefully avail[ing] itself of the privilege of conducting activities within" the Commonwealth (citation omitted), <u>Bulldog Investors Gen. Partnership</u>., 457 Mass. at 217, but to Xtreme's decision to work for Massachusetts-based Pray.  If Wesco's suit-related conduct could be said to create any contact with the Commonwealth at all, it was "too attenuated a contact to justify [the] exercise of in personam jurisdiction."[15]  <u>World-Wide Volkswagen Corp</u>. v. <u>Woodson</u>, 444 U.S. 286, 299 (1980).

Matters might stand differently had the insurance policy involved here been issued directly to and paid for by a Massachusetts resident.  Thus, in <u>McGee</u>, 355 U.S. 220, the Supreme Court ruled that due process was not offended by a California court's exercise of jurisdiction to hear a life insurance beneficiary's suit against a Texas insurer "based on

---

[15] The first motion judge thought it significant that Wesco's considerable Massachusetts insurance sales activity made it "foreseeable to Wesco that it could be haled into court here on a specific claim for coverage by an insured located in Massachusetts," without acknowledging that the policy at issue here was neither sold in Massachusetts nor sold to a Massachusetts insured.  The first motion judge also relied on its being "reasonably foreseeable that defending this action in Massachusetts might arise from Wesco agreeing to insure, as an 'additional insured,' a company located in Massachusetts."  This approach mistook indirect contact with a party from a forum State for contact with the forum State itself.

[an insurance] contract which had substantial connection with [California]." Id. at 223. Notwithstanding that the insurer had "never solicited or done any insurance business in California apart from the policy involved," id. at 222, it was sufficient that "[t]he [insurance] contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died," id. at 223. But here, unlike in McGee, Wesco did not deliver the policy to Pray (let alone do so in Massachusetts), nor did Pray pay premiums to Wesco (let alone do so from Massachusetts). And the principal focus of the insurance contract was Xtreme's work in New York, not any activity in Massachusetts.

Pray asserts that Wesco had suit-related contact with the Commonwealth by "agreeing to defend Pray, a Massachusetts resident, as an additional insured in an action in any state, including Massachusetts." But this overstates the case. It is true that the policy applies to property damage if caused by an "occurrence" (defined in pertinent part as "an accident") that takes place in the "coverage territory," and that the policy includes a multiparagraph definition of "coverage territory" that includes "[t]he United States of America (including its territories and possessions), Puerto Rico and Canada." But all of the cases Pray relies on for its coverage territory argument

found jurisdiction based on occurrences in the forum State itself, a factor that is absent here.[16]

Accordingly, on this factual record -- which includes the named insured Xtreme's representation to Wesco that it did business only in New York -- we do not think the broad coverage territory provision, in combination with the presence of a blanket additional insured (Pray) in Massachusetts, adds meaningfully to Wesco's suit-related contacts with Massachusetts.[17]  To whatever extent it was foreseeable that

---

[16] The sole published decision upon which Pray relies, Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911 (9th Cir. 1990), ruled that a court in Montana had jurisdiction over a Canadian insurer whose insured was injured in a car accident in Montana and brought suit in Montana.  Id. at 912, 913.

[17] Wesco's argument that the coverage territory clause is insufficient relies heavily on Lexington Ins. Co. v. Hotai Ins. Co., Ltd., 938 F.3d 874 (7th Cir. 2019).  There, the court said that a policy's "worldwide coverage" clause defined the territorial scope of the insurers' obligation to an additional insured, but did not "establish[] a purposeful connection between the insurers and every American state, all of which [were] included in the covered territory."  Id. at 882.  The Lexington Ins. Co. court noted, however, that its conclusion "might" have been different if the policy there at issue had included a duty-to-defend clause.  Id.  Here, Wesco's policy does include such a clause, but Pray has not addressed Lexington Ins. Co. at all.  We treat that decision as informative, but not directly on point.  Other such cases are Repwest Ins. Co. v. Country-Wide Ins. Co., 166 A.D.3d 61, 66 (N.Y. 2018) (discussing split in authority; holding that foreign insurer's territory of coverage clause did not constitute sufficient contact with forum State to support specific jurisdiction over insurer in case arising out of automobile accident in that State); and KCHM, Inc. v. Mid-Continent Cas. Co., 264 F. Supp. 3d 697, 700-702

Xtreme might add a Massachusetts entity like Pray as a blanket additional insured, and that Pray might later sue Wesco in Massachusetts, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." World-Wide Volkswagen Corp., 444 U.S. at 295. What is critical is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297. Wesco's conduct in insuring Xtreme (and thus, indirectly, Pray) did not create a sufficient connection with Massachusetts to satisfy that standard.

iii. Traditional notions of fair play and substantial justice. The third requirement of due process is that "the assertion of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice" (quotation and citation omitted).[18] Bulldog Investors Gen.

---

(E.D.N.C. 2017) (broad territory of coverage clause did not suffice to establish personal jurisdiction over foreign insurer in additional insured's action to resolve coverage dispute, where only connection to forum State was that additional insured was incorporated and had principal place of business in that State).

[18] "Thus courts in 'appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the

Partnership, 457 Mass. at 217.  But this requirement applies only "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State," Burger King Corp., 471 U.S. at 476, and such contacts must give rise to or relate to the claims asserted, id. at 472.  See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) ("if the [party arguing for jurisdiction] clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction").  "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  Id.

Here, we have concluded that Wesco's contacts with Massachusetts are unrelated to the claims in this case, and that whatever indirect contact (if any) Wesco had with Massachusetts related to Pray's claims is insufficient to satisfy due process. It is therefore unnecessary to address whether the exercise of jurisdiction by Massachusetts courts would comport with traditional notions of fair play and substantial justice.[19]

---

several States in furthering fundamental substantive social policies.'"  Burger King Corp., 471 U.S. at 476-477, quoting World-Wide Volkswagen Corp., 444 U.S. at 292.

[19] Pray's request for appellate attorney's fees and costs is denied.

Conclusion.  The judgment is vacated, and a new judgment shall enter dismissing the complaint for lack of personal jurisdiction.

So ordered.